## RAYMOND WEISE v. RED OWL STORES, INC.

175 N. W. (2d) 184.

February 20, 1970—No. 41680.

*Blethen, Ogle, Gage & Krause* and *Bailey W. Blethen,* for appellant.

*Gault, MacKenzie & Gustafson,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Defendant, Red Owl, Inc., appeals from an order of the district court denying an alternative motion for judgment n. o. v. or a new trial.

Plaintiff, Raymond Weise, purchased a one-story building in Slayton, Minnesota. It was subject to a lease held by one Robert Sacks, who operated an independent retail grocery store in the building. In June 1961, plaintiff and Sacks executed a new 5-year lease, to expire on June 30, 1966, with monthly rentals of $500. In early November 1961, two employees of defendant came to plaintiff's home in St. Peter, Minnesota. Plaintiff worked nights, so his wife had to wake him. The employees told him Red Owl was interested in buying out Sacks and putting its own man in the store. They said that Red Owl wanted to get its man, Orville Olson, in business quickly and close the deal for the purchase of Sacks' store right away but that first Olson would have to be given a lease to replace the one Sacks had. Plaintiff had never met Olson and only knew of him as the man who ran the Red Owl store in Slayton. Plaintiff looked over the seven-page lease and

signed it. This all took about an hour. The Red Owl employees remembered nothing about what was said.

The lease was drawn by Red Owl's legal department. It did not specifically mention Red Owl was the lessee, but did provide Red Owl had the sole right to decide whether or not Olson could assign the lease. Red Owl was given an option on the fixtures. The Red Owl name was mentioned ten times in five different sentences on one page.

Plaintiff, from what the Red Owl employees told him, believed that Red Owl was a party to the lease or was, at least, standing behind it. A week after the lease was signed, Red Owl sent plaintiff his copy of the lease. It contained a paragraph taped on it which stated: "It is understood and agreed that, notwithstanding the fact that Red Owl is not a party to this Lease, the foregoing provisions are made for the benefit of Red Owl and Red Owl shall have the right to enforce the same against the Lessor and the Lessee." Defendant contended this clause was always in the lease but plaintiff claimed it was added after he signed. The clause was not initialed by plaintiff and his wife even though a place was provided for initials. Plaintiff and his wife had initialed another provision when a place was provided. This fact supports plaintiff's contention.

Olson ran the store as a Red Owl agency store for about 1 1/2 years. Red Owl arranged for him to sell out and assign the lease to Paul McKee. McKee ran it for about a year when he, again with Red Owl guidance, sold out and assigned the lease to William Kennedy. Kennedy went bankrupt in October 1965. A Red Owl employee, John Elias, after being made trustee under a voluntary trust arrangement, liquidated the inventory and fixtures; paid the debts owed Red Owl and other creditors; paid plaintiff for a walk-in cooler; and paid the rent for the month of November.

Red Owl refused to pay rental to the end of the lease period. Plaintiff retained counsel who apparently attempted to find another tenant but failed. This attorney became ill and present

counsel was retained. Suit was brought against Red Owl predicated on several theories, but after the evidence was presented, the only theory remaining was that Red Owl had misrepresented the facts to plaintiff and thereby induced him to give up his lease with Sacks and sign one with Olson.

The jury, on a special verdict, found that Red Owl had misrepresented the facts of the transaction; that it was a material misrepresentation; that plaintiff relied on it; and that plaintiff had made efforts to mitigate damages. The court found plaintiff's damages to be $3,500, which represented the aggregate of the $500 monthly rental from December 1, 1965, until June 30, 1966, when the lease with Sacks would have expired.

Defendant contends on this appeal that plaintiff failed to prove that any misrepresentations were made, or, if they were made, that plaintiff relied on them; that plaintiff failed to prove damages; and that plaintiff is guilty of laches or has waived his rights.

■ In Davis v. Re-Trac Mfg. Corp. 276 Minn. 116, 149 N. W. (2d) 37, the requirements for the tort of fraudulent misrepresentation were listed. They are:

(1)    There must be a representation.

(2)    That representation must be false.

(3)    It must have to do with a past or present fact.

(4)    That fact must be material.

(5)    It must be susceptible of knowledge.

(6)    The representer must know it to be false or, in the alternative, must assert it as of his own knowledge without knowing whether it is true or false.

(7)    The representer must intend to have the other person induced to act or justified in acting upon it.

(8)    That person must be so induced to act or so justified in acting.

(9)    That person's action must be in reliance upon the representation.

(10)    That person must suffer damage.

(11) That damage must be attributable to the misrepresentation, that is, the statement must be the approximate cause of the injury.

The evidence presented justified the jury and judge in determining that all of these elements are present in this case. The two Red Owl employees, knowing Red Owl would not be a party to the lease, made statements which induced plaintiff to believe Red Owl was a party to the lease or would stand behind the person who was lessee and who would run the Red Owl agency store. Whether or not Red Owl was a party was a present fact susceptible of knowledge. The employees intended plaintiff to believe these representations so that he would sign the lease they presented to him. Relying on the representation Red Owl was a party, plaintiff signed the lease. This was a material representation because, without a financially responsible party such as Red Owl, plaintiff probably would not have given up the lease he already had with Sacks. When Kennedy, to whom the lease had been assigned, went bankrupt, plaintiff suffered the loss of 7 months' rent that he would have had if he had not given up the Sacks lease to enter into the one in issue here.

■ Defendant contends that the finding of reliance by plaintiff is not supported by the evidence, basing this contention on the facts that the lease does not specifically state Red Owl is a party and that, when plaintiff received his copy of the lease, Red Owl had taped on a clause stating Red Owl was not a party. Fraud must be proved by clear and convincing evidence, especially where a party seeks to avoid the effects of a written instrument. Nelson v. Berkner, 139 Minn. 301, 166 N. W. 347. The evidence presented by the plaintiff meets this test. Plaintiff testified that he signed the lease believing Red Owl was the lessee because the two Red Owl employees told him Red Owl was "buying out Mr. Sacks, and they had a lease there that they would like me to sign," and Red Owl's name figured prominently in a number of provisions in the lease. We hold that where a party makes a representation which a signed document contradicts, the person

to whom the representation was made is justified in relying upon it where the document, as here, is couched in ambiguous legal language which a layman could reasonably believe supported the representation.

■ The damages awarded are correctly computed. Plaintiff is entitled to recover his "out-of-pocket" loss—the difference between what he parted with and what he received. Lehman v. Hansord Pontiac Co. Inc. 246 Minn. 1, 74 N. W. (2d) 305. The jury found that plaintiff tried to mitigate damages, and Red Owl offered no evidence to show that he could have mitigated them by reasonable diligence. Therefore, plaintiff is entitled to the full $500 per month up to the expiration date of the lease with Sacks.

■ Finally, Red Owl contends that plaintiff is guilty of laches or that, with knowledge of his rights, he has freely and voluntarily waived them. Waiver can be inferred from acts and conduct. Engstrom v. Farmers & Bankers Life Ins. Co. 230 Minn. 308, 41 N. W. (2d) 422. The evidence is contradictory on the issue of when plaintiff had notice that Red Owl was not a party. On direct examination plaintiff stated he didn't realize this until November 1965 when Red Owl refused to pay any rent after Kennedy went bankrupt. On cross-examination his testimony indicated he realized Red Owl was not a party when he read the clause to that effect which had been taped on his lease. The only conclusion that can be drawn from this is that the jury accepted what he said on direct examination and discounted what he said on cross-examination because of its ambiguous wording of the clause, which states that Red Owl is not a party, yet purports to give it substantial rights under the lease. A layman could easily be confused as to the legal consequence of this clause and of the entire lease and conclude Red Owl was a party. Therefore, we must accept the inferences drawn by the jury from these facts and are not free to substitute our own.

Affirmed.