BARR/NELSON, INC., Respondent,

v.

TONTO'S, INC., et al., Respondents,

Richard Larsen, et al., Respondents,

and

TONTO'S, INC., et al., third party plaintiffs, Respondents,

v.

BALBOA INSURANCE COMPANY, et al., third party defendants, Appellants,

and

BARR/NELSON, INC., third party plaintiff, Respondent,

v.

HOLLENBACK AND NELSON, INC., third party defendant, Respondent,

Key Plumbing and Heating, third party defendant, Respondent,

Volk Trucking and Excavation, Inc., third party defendant, Respondent,

Ko-Son Piping Company, Inc., third party defendant, Respondent,

Bituminous Roadways, Inc., third party defendant, Respondent.

Nos. C6–81–1289, C3–82–529.

Supreme Court of Minnesota.

July 1, 1983.

48

Edward A. Towey, St. Paul, for appellants.

Bassford, Heckt, Lockhart & Mullin, Lynn G. Truesdell and Rebecca L. Moos, Minneapolis, for Barr/Nelson, Inc.

Plunkett, Schmitt & Plunkett and Hugh V. Plunkett III, Austin, for Tonto's, Inc., et al.

Leonard, Street & Deinard and Lowell J. Noteboom, Minneapolis, for Larsen, et al.

David Grant, Minneapolis, for Hollenback and Nelson, Inc., third party defendant.

Donald J. Fraley, Wayzata, for Key Plumbing and Heating, third party defendant.

A.H. Michals and Jerome R. Klukas, Minneapolis, for Volk Trucking and Excavation, Inc., third party defendant.

Malcolm D. MacGregor, Minneapolis, for Ko-Son Piping Co., Inc., third party defendant.

Howard A. Knutson, Burnsville, for Bituminous Roadways, Inc., third party defendant.

TODD, Justice.

Tonto's Inc. contracted with Barr/Nelson for the construction of a restaurant. Bal-

boa Insurance Company furnished payment and performance bonds. The owner declared Barr/Nelson in default and arranged for completion of the building. Litigation followed involving all interested parties including subcontractors. Tonto's settled the case with all parties, reserving only its alleged claims against Balboa, who did not participate in the settlement. The jury awarded general and punitive damages to Tonto's for willful and malicious breach of the covenant of good faith by Balboa. The jury found no fraud. We approve the settlement agreement but reverse the award of damages under the facts of this case.

This litigation arises from the design and construction of a Tonto's Restaurant in Minneapolis. The owner, Tonto's, Inc. and Everett Cilley ("Tonto's"), signed a contract with Barr/Nelson, Inc., George Barr and David Nelson ("Barr/Nelson"), the general contractor, to construct the building. The construction contract was bonded with payment and performance bonds, signed by the surety Balboa Insurance Company, AVCO Financial Insurance Group and Action Surety ("Balboa Insurance Company"). Tonto's signed a separate contract with the architect Richard Larsen and Larsen Associates, Inc. ("Larsen").

When the construction project was not completed in October, 1978, Tonto's declared Barr/Nelson in default. Tonto's finally terminated Barr/Nelson's contract in January, 1979, three months after the scheduled completion date. Barr/Nelson began litigation, seeking damages for breach of the construction contract, wrongful termination of the contract and interference with business relationships. Barr/Nelson sued Larsen for breach of contract and malpractice. Tonto's counterclaimed against Barr/Nelson for breach of contract and counterclaimed against Larsen for breach of contract and contribution. Larsen cross-claimed against Tonto's for breach of contract and contribution.

Tonto's hired a new contractor and architect to complete construction. Subsequently, Tonto's sued Balboa Insurance Company, the original contractor's surety, for breach of contract and for punitive damages. Balboa counterclaimed against Tonto's and cross-claimed against Barr/Nelson, claiming subrogation and indemnity. Ultimately, Barr/Nelson and Tonto's brought in some of the subcontractors on the project, Hollenbeck and Nelson, Inc., Key Plumbing and Heating, Volk Trucking and Excavation, Ko-Son Piping Company, Inc., and Bituminous Roadways, Inc., as defendants. The subcontractors, in turn, asserted claims against Barr/Nelson.

All parties except the surety, Balboa Insurance Company, signed a settlement agreement conditional upon obtaining summary judgment as to liability of the parties. The settlement agreement, a modified Pierringer release, released all claims among and between the settling parties, but retained the owner's action against Balboa for "independent acts" apart from its liability for the acts of the contractor. Barr/Nelson moved for summary judgment on the following matters:

1) That all claims of Balboa be dismissed as a matter of law, except for claims for indemnity for attorneys fees up to $19,803.82, which is the amount of fees through May 15, 1981;

2) That, as a matter of law, and the conditional settlement agreement, the owner retain claims against Balboa for independent acts (fraud and breach of the covenant of good faith).

3) That all other claims of all parties be dismissed as a matter of law and pursuant to the conditional settlement agreement.

The trial court granted Barr/Nelson's summary judgment motion and Balboa appealed.

The action between Tonto's and Balboa relating to Balboa's independent acts of breach of good faith and fraud arose in part from a dispute about Small Business Administration bonds which Balboa obtained to guarantee Barr/Nelson's payment and performance. To obtain SBA bonding for Barr/Nelson, Balboa filed a Surety Bond Guarantee Assistance Application and a Surety Bond Guarantee Underwriting Re-

view with the SBA. Tonto's claimed that much of the information supplied by Balboa on the Application and Review was false and forged. Tonto's conditioned the construction contract on Barr/Nelson's procurement of the bonds because they were skeptical of Barr/Nelson's ability and wanted assurance that Barr/Nelson was a bondworthy contractor. Tonto's claimed that Balboa's false statements enabled Barr/Nelson to secure SBA bonding. Without the bonding, Tonto's would not have hired Barr/Nelson and would not have suffered damages through poor workmanship and delays.

The action arose also from alleged false representations made to Tonto's by Balboa after Barr/Nelson's default. Tonto's argued that Balboa represented to them that Barr/Nelson could complete the restaurant and that Balboa would hire a supervisor to assist in the completion. As a result of Balboa's representations, Tonto's argued, Tonto's did not terminate Barr/Nelson until January 1979, although Barr/Nelson had agreed to complete construction in October 1978. Balboa also promised to hire Donald Augst, a contractor with 30 years' experience, to supervise Barr/Nelson's completion of the restaurant. Balboa never hired Augst and never supervised completion itself.

Finally, Tonto's claimed that Balboa reported falsely to the SBA, indicating that the project was substantially completed and that there were no claims under the surety bond. All of these actions by Balboa, Tonto's concluded, justified punitive damages for fraud and breach of the covenant of good faith.

At the close of Tonto's evidence, Balboa moved for a directed verdict, arguing that Tonto's had not shown that its damages exceeded the bond amount and that it had not proved fraud. The trial court denied the motion. At the close of all the evidence, both parties submitted jury instructions to the court. Balboa objected that the instruction ultimately given by the court on the duty of a surety wrongly stated the law. In addition, Balboa objected that the

court should have ruled as a matter of law that a surety's duty to take over a construction contract does not arise until the contractor is terminated by the owner, not when the contractor defaults, as Tonto's argued.

The jury answered the special verdict form provided to it, finding that Barr/Nelson was in default, that Balboa had not perpetrated a fraud on Tonto's but that Balboa had breached its covenant of good faith, inflicting damages of $75,000 on Tonto's as a result. The jury found Balboa's conduct willful and malicious and the cause of Tonto's damages. The jury assessed $500,000 punitive damages against Balboa.

Balboa moved for JNOV or new trial but the court denied its motion and ordered judgment for $575,000. Balboa renewed its motion for a new trial or, in the alternative, remittitur. The court denied this motion. Balboa appealed and the appeal from the partial summary judgment was consolidated with Balboa's post-trial appeal.

The issues are:

1. Should a Pierringer-type settlement be permitted in a dispute involving a construction contract?

2. If a settlement agreement is approved, what rights survive as between the owner and the nonsettling surety?

3. Were the acts of the surety fraudulent as a matter of law?

4. May punitive damages be awarded in a contract action for a willful and malicious breach of a covenant of good faith?

5. May general contract damages be awarded to an owner against a surety where the owner has settled with the contractor?

6. Should attorney's fees be awarded to an insurer where its insured has settled its claims with the subcontractors and owner?

■ 1. Balboa claims that the settlement agreement used in this case should not be permitted. It claims that the agreement is collusive and has the effect of juxtaposing the parties. We do not find such a result and approve the use of Pierringer-

type releases in construction contract disputes as a tool of settlement.

■ 2. Any claim the owner may have against the surety for the acts of the contractor was waived when the contractor and owner agreed to the settlement. Having approved the settlement agreement, however, we find that the settling owner may still have rights against the non-settling surety, as the settlement agreement failed to address all the claims the owner has against the surety. The owner claims contractual rights against the surety for the surety's alleged "independent acts" which hampered completion of construction and allegedly caused damage to the owner. The owner may also have a tort claim based on fraud if the evidence will support such a claim.

■ 3. The jury in this case found that the evidence did not support a claim of fraud. Tonto's has filed a notice of review, claiming fraud was established as a matter of law. Tonto's also attacks the trial court's instructions on the issue of fraud.

The trial court instructed the jury on the elements of fraudulent misrepresentation, as listed in *Weise v. Red Owl Stores, Inc.,* 286 Minn. 199, 175 N.W.2d 184 (1970), and as requested by Tonto's. When the jury requested additional instruction on fraud after jury deliberations had begun, the court repeated part of the original instructions.

Tonto's admits that the court's instructions were correct as given, but argues only that the instructions given were too limited. Tonto's requested additional instructions defining fraudulent intent, reliance, when a fact is "susceptible of knowledge," representations made to a third person or persons, and liability for nondisclosure. The requested instructions do not alter the law as explained by the court. Except for the instruction on representations made to a third person, the requested instructions were substantially covered by the court in its charge. The proposed instruction on representations made to a third person was not accompanied by citation of any Minnesota case law containing this rule. The trial court was justified in refusing to give the instruction.

In general, it is not error to refuse instructions whose substance is adequately contained in the general charge. *Woodrow v. Tobler,* 269 N.W.2d 910, 917 (Minn.1978); *Poppenhagen v. Sornsin Construction Co.,* 300 Minn. 73, 81, 220 N.W.2d 281, 286 (1974). The court's instructions on fraudulent misrepresentation accurately reflected Minnesota law. They also fairly reflected the plaintiff's theory of the case: that Balboa had actively misrepresented facts on the SBA application and underwriting review, that Balboa lied to Tonto's regarding Barr/Nelson's ability to complete work under the contract and that Balboa lied about its plan to hire Donald Augst, an experienced contractor to consult with Barr/Nelson after Barr/Nelson defaulted on its contract to build the restaurant.

■ Tonto's also claims that the trial court should have found fraud as a matter of law in this case. Its claim does not comport with Minnesota law. It is within the province of the trier of fact to determine whether a defendant has misrepresented material facts and whether the misrepresentations proximately caused plaintiff's injury. *Strouth v. Wilkison,* 302 Minn. 297, 224 N.W.2d 511 (1974); *Davis v. Re-trac Manufacturing Corp.,* 276 Minn. 116, 149 N.W.2d 37 (1967). On appeal, the evidence must be viewed in the light most favorable to the verdict and inquiry is limited to an assessment of whether the evidence as a whole reasonably supports the verdict. *Faust v. Parrott,* 270 N.W.2d 117, 120 (Minn.1978). The record discloses sufficient evidence to support the jury's verdict.

■ 4. The jury determined that Balboa's conduct toward Barr/Nelson was willful and malicious and assessed $500,000 punitive damages. Appellant claims that, since the gravamen of the action was breach of contract, punitive damages were not available. The jury found that Balboa was not liable in fraud; therefore, punitive damages are not available on this ground. Tonto's urges that case law in Minnesota

supports its position that punitive damages are available if a breach of contract is accompanied by willful or malicious conduct, even though the malicious conduct does not itself rise to the level of an independent tort.

Punitive damages in this case were assessed under Minn.Stat. § 549.20 (1982). Subdivision 1 of the statute provides that punitive damages may be awarded in civil actions "only upon clear and convincing evidence that the acts of defendant show a willful indifference to the rights or safety of others." The trial court found that Balboa acted in bad faith and that, as a matter of law, ample evidence existed to show that Balboa's conduct was willful and malicious.

Minn.Stat. § 549.20 was enacted in 1978. Act of April 5, 1978, ch. 738, § 4, 1978 Minn.Laws 836, 838. Prior to that date, Minnesota case law was settled that, in the absence of a specific statutory provision, extra-contract damages are not available for breach of contract, except in exceptional cases where the breach is accompanied by an independent tort. *Minnesota-Iowa Television Co. v. Watonwan T.V. Improvement Association,* 294 N.W.2d 297, 309 (Minn. 1980); *Haagenson v. National Farmers Union Property and Casualty Co.,* 277 N.W.2d 648, 652 (Minn.1979); *Olson v. Rugloski,* 277 N.W.2d 385, 388 (Minn.1979). In *Minnesota-Iowa Television Company v. Watonwan T.V. Improvement Association,* this court considered whether Minn.Stat. § 549.20 altered the common law relative to punitive damages for breach of contract actions.

In *Watonwan T.V.,* a local television station brought an action against the local T.V. improvement association, a non-profit organization, to enforce the terms of a contract between them prohibiting the association's translator station from carrying any signal duplicating the local station's network programming. The trial court ordered Watonwan to comply with the contract. Watonwan appealed from the judgment and the TV station appealed as to denial of attorney's fees and punitive damages. This court refused to assess punitive damages, even where Watonwan deliberate-

ly breached its contract with the television station. An intentional breach, in and of itself, is not enough to justify an award of punitive damages, where it does not amount to an independent tort.

The court found that Minn.Stat. § 549.20 did not change preexisting case law disallowing punitive damages for breach of contract actions.

Since the concern of the legislature was to limit the frequency and amounts of punitive damages awards, it is unlikely that the legislature intended to extend such damage awards to contract actions. The fact that subdivision 3 recites the standards for the award of punitive damages set out in Minnesota case law further supports the inference that section 549.20 leaves intact the case law prohibition against punitive damages in contract actions. We believe that if the legislature had intended to overrule the line of cases prohibiting punitive damages in contract cases, it would have specifically provided for such awards in the statute. 294 N.W.2d at 311.

In the instant case, the complaint arose from Balboa's alleged false statements in the bonding application and underwriting review and its alleged false statements to Tonto's regarding its obligations under the bond. A bond such as those issued in this case operated as a contract whereby the surety, Balboa, engaged to be answerable for the debt or default of Barr/Nelson. A. Stearns, *The Law of Suretyship* § 1.1, at 1 (5th ed. 1951). This court has read an implied condition of good faith into a nonsales contract containing reciprocal duties and obligations on the part of the contracting parties where one of the parties made it impossible for the other to perform. *Haase v. Stokely-Van Camp, Inc.,* 257 Minn. 7, 99 N.W.2d 898 (1959). The court has not determined whether an implied condition of good faith exists with respect to bonding obligations specifically. Yet, even assuming that an implied covenant existed and was broken maliciously in this case, the malicious motive goes only to determining whether a material breach has

occurred, but is immaterial insofar as damages for contract breach are concerned. *See Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775 (1975). Unless the willful and malicious conduct constitutes an independent tort, Minnesota law does not permit recovery of punitive damages.

5. The jury awarded Tonto's $75,000 in general damages. The evidence supporting the award discloses claims as follows: Attorney fees and costs, $63,055.97; Interest Expense, $15,094.60; Storage costs, $256.25; and Employee expenses, $750.00; Total, $79,156.87. We will discuss each of these items separately below.

▮ We have long held that attorney fees are not recoverable in litigation unless there is a specific contract permitting or a statute authorizing such recovery. *Jacobs v. Rosemount Dodge-Winnebago South,* 310 N.W.2d 71, 79 (Minn.1981); *Cherne Industrial, Inc. v. Grounds & Associates, Inc.,* 278 N.W.2d 81, 96 (Minn.1979). In this case, recovery must be based on a breach of the surety contract between Balboa and Tonto's. The performance bond is the contract between the parties and thus contains the terms of their agreement. The performance bond is a standard form approved by the American Institute of Architects. The bond makes no provision for recovery of attorney fees. Further, no statute specifically authorizes award of attorney fees in a case of this nature.

▮ Minn.Stat. § 549.21 (1982), codifies an exception to this general rule that attorney fees are not awarded absent an authorizing contract or statute. The exception provides that, where a party or attorney acted in bad faith as to an issue in litigation, attorney fees can be awarded. Although the jury found that Balboa acted

willfully and maliciously in failing to carry out its obligation under the bond, the trial court made no finding regarding bad faith in the conduct of the litigation itself. This distinction is crucial, as we have held that Minn.Stat. § 549.21 *only* incorporates bad faith as to an issue in litigation. *Minnesota-Iowa Television Co. v. Watonwan T.V. Improvement Association,* 294 N.W.2d 297, 311 (Minn.1980).[1] Our examination of the record below does not show that Balboa acted in bad faith in bringing this litigation.

▮ The interest expense claimed by Tonto's is not a recoverable item of damage. *Parkside Mobile Estates v. Lee,* 294 N.W.2d 327, 328 (Minn.1980).

▮ The claims for storage expense and employee expense are not recoverable. They arise from damages allegedly due to the failure of Barr/Nelson to complete the construction project on time. As such, they arise from the contract. Any additional claims arising from the contract were waived when the parties signed the agreement settling their claims. The owner cannot seek reimbursement for these damages now. *See Northern Petrochemical Co. v. Thorsen & Thorshov, Inc.,* 297 Minn. 118, 211 N.W.2d 159 (1973).

▮ 6. In its order granting summary judgment based on the settlement agreed upon by the contracting parties, the trial court limited any indemnity claim by Balboa for attorney's fees to $19,803.82, the amount expended up to the time of the summary judgment. This was proper, as the gravamen of the complaint against Balboa following the summary judgment was tortious conduct independent of the contract. There is no implied right of indemnity for one's own wrongful conduct. *Farmington Plumbing & Heating Co. v. Fischer*

1. The trial court cited *Brown v. State Automobile & Casualty Underwriters,* 293 N.W.2d 822 (Minn.1980), to support its award of attorney fees to Tonto's. *Brown* does not justify an award in this case. In *Brown,* the insurer refused to defend its insured or to indemnify him in an action resulting from an argument between insured and another man. Insured struck the other man; the insurer contended that insured's homeowner policy excluded coverage for bodily injury caused intentionally by the insured and that it had no duty to indemnify or defend. This court found the insurer had breached both its duty to defend and to indemnify and that it was liable for attorney fees incurred in insured's attempt to force insurer to provide indemnification. This case is distinguishable from *Brown* in that Balboa's duty to indemnify Tonto's ended when the contracting parties settled their claims against each other.

*Sand and Aggregate, Inc.,* 281 N.W.2d 838 (Minn.1979). An insurer cannot seek indemnity from its insured for costs incurred in defending its independent acts apart from the contract.

Affirmed in part, reversed in part.