**ST. CROIX PRINTING EQUIPMENT, INC., Appellant,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, et al., Respondents.**

**No. C0-88-792.**

Court of Appeals of Minnesota.

Sept. 20, 1988.

Review Denied Nov. 16, 1988.

Robert S. Brill, Martha A. Sundberg, Po-indexter Jacobson Stromme & Harwood, P.A., Minneapolis, for appellant.

John R. O'Brien, Timothy Crom, Lawrence M. Rocheford, Jardine, Logan & O'Brien, St. Paul, for respondents.

Heard, considered, and decided by FOLEY, P.J., and NORTON and LESLIE,* JJ.

## OPINION

DAVID R. LESLIE, Judge.

Appellant St. Croix Printing Co. appeals from a summary judgment granted defendant Rockwell, Inc. St. Croix contends the trial court erred in finding no genuine issues of material fact exist as to its breach of express warranty and misrepresentation claims. We affirm in part and reverse and remand in part.

## FACTS

Appellant St. Croix Printing Equipment, Inc. (St. Croix) is a corporation located in Minneapolis and is involved in the purchase and resale of new and used printing equipment. Deborah Sexton is the CEO for St. Croix. On September 4, 1985, St. Croix entered into an "as is" agreement with Tobi's Graphics (Tobi's) of California. This agreement required St. Croix to locate a used printer for Tobi's to purchase.

Sometime prior to September 12, 1985, Sexton had a telephone conversation with Stan Stevens, an employee of Rockwell Graphics, Inc. (Rockwell), located in Illinois. Per this telephone conversation, Sexton agreed to purchase a used 226 RZ Adast Perfector (press) from Rockwell.

Rockwell took the press "in trade" from Bartow Printing Company (Bartow) of Florida; consequently, the press is considered to be located in Florida. Sexton desired to ship the press directly from Rockwell to Tobi's without inspecting it. Sexton alleges she asked Stevens about the condition of the press and was told that it was in working condition. The press was believed to be a two-color press capable of four-color printing. The contract between Rockwell and St. Croix stated the agreed-upon price of $15,000 and contained an "as is" clause. In addition, there was an integration clause in the contract stating that the contract encompassed the entire agreement between the parties.

Tobi's received the press on October 18, 1985. After an inspection, Tobi's found the press was not functioning properly. Tobi's promptly rejected the press because it was incapable of four-color printing. St. Croix agreed to take the press back from Tobi's and commenced an action against Rockwell in Hennepin County District Court on two counts: (1) breach of express warranty, and (2) misrepresentation. On January 28, 1988, the trial court dismissed the complaint with prejudice. This appeal followed.

St. Croix urges this court to find that factual issues exist regarding a breach of express warranty, as Rockwell represented that the press was in good working condition, and also to find factual issues regarding misrepresentation, as St. Croix relied on the representation to its detriment.

Rockwell contends that this suit is barred by the "as is—where is" language located on the face of the contract that was written subsequent to any oral representa-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

tions. In addition, they contend the contract disclaims any and all express or implied warranties, including a warranty of merchantability. Finally, Rockwell points out that the signed contract states that all agreements made between the parties are contained in the written document.

## ISSUE

Did the trial court err in granting respondents' motion for summary judgment?

## ANALYSIS

Summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact existing and either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03.

In reviewing a decision of summary judgment by the trial court, the function of this court is to determine (1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn. 1979). In cases involving summary judgment, the evidence is to be viewed in the light most favorable to the nonmoving party. *Campion v. County of Wright*, 347 N.W.2d 289, 291 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. July 26, 1984).

### a. *Breach of Express Warranty.*

A somewhat extended analysis on this subject appears appropriate.

Express warranties may be created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

U.C.C. § 2–313 (1972).

■ Express warranties are considered terms that have been "dickered" out and go directly to the essence of the bargain. *Id.* at comment 1. Because the warranty is basic to the agreement, a general disclaimer is ineffective. *Id.* Implied warranties must be conspicuously and unambiguously disclaimed to be effective. *Id.*

■ Implied warranties can effectively be disclaimed by using such words as "as is" or "with all faults" that are conspicuous enough to call to buyers' attention the fact that there are no such warranties. U.C.C. § 2–316(3)(a) (1972). In commercial usage, such terms imply that the risks are on the buyer, not the seller. *Id.* at comment 7.

■ When an apparent conflict arises between express and/or implied warranties, wherever possible they are to be construed as consistent with each other. U.C.C. § 2–317 (1972). However, if there is no reasonable construction in construing them together, the intent of the parties will dominate. In ascertaining that intention, the following rules apply:

> Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant. In ascertaining that intention the following rules apply:

(a) Exact or technical specifications displace an inconsistent sample or model or general language of description.

(b) A sample from an existing bulk displaces inconsistent general language of description.

(c) Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose.

U.C.C. § 2–317 (1972).

Additional guidance for determining the intentions of the parties concerns an agreement that has been reduced to writing and is set forth as:

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(a) by course of dealing or usage of trade (Section 1–205) or by course of performance (Section 2–208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

U.C.C. § 2–202 (1972).

■■■ The written agreement may only be challenged when it was *not* intended by the parties as the final expression of their agreement. White & Summers, *Uniform Commercial Code* § 12, at 434 (2d ed. 1980). Unless a contract is ambiguous, a clause stating that the "written agreement is a complete and exclusive statement of the terms of the agreement" will likely be sufficient to exclude from any evidence proof of any oral warranty. *Id.* at 435. Moreover, courts should not interfere with a contract when the rights of the parties are evidenced by writing which purports to express their full agreement. *Cady v. Bush*, 283 Minn. 105, 110, 166 N.W.2d 358, 362 (1969).

In this case, St. Croix urges the court to find a breach of express warranty. St. Croix argues that the oral representations made by Stevens to Sexton concerning the condition of the press became express warranties under U.C.C. § 2–313. Moreover, these express warranties became a basis of the bargain. Although St. Croix recognizes that while the written contract contained "as is—where is" language negating any warranties, they argue it applies only to implied, as opposed to express, warranties. *See* U.C.C. § 2–316(3)(a). In essence, St. Croix contends that a fact question exists concerning the creation of the express warranty.

Rockwell, on the other hand, contends that the parol evidence rule prevents St. Croix from prevailing on this argument. Because the final agreement has been reduced to writing, prior or contemporaneous contradictory allegations of oral representations are barred. *See* U.C.C. § 2–202.

The face of the contract signed by the parties states as follows:

One (1) used 226 RZ Adast Perfector, S/N 3174619 with OMC Spray, Baldwin Recirculators, Standard Dampening, Wash–Up, Quick Acting Clamps, some tools.

AS IS—WHERE IS floor of
Bartow Printing Company
495 E. Summerlan
Bartow, Florida

Moreover, the contract unambiguously and conspicuously disclaims any warranty of merchantability, or any other warranties, *express* or *implied,* of any affirmations of fact or representations made except those stated in the contract itself. The contract sets forth in paragraph 11 the consequences of buying "as is." Further, paragraph 16 states:

The whole agreement between the parties is contained herein. All representations, affirmations or technical matter unless inserted herein or incorporated by reference are void.

■■■ Here we have a contract between "merchants." *See* U.C.C. § 2–104(1). There is no unequal bargaining power. *Both* St. Croix and Rockwell are in the

business of buying and selling used printing equipment. *Both* St. Croix and Rockwell use "as is" language in their own agreements with their respective clients and were aware of the consequences of the language. *Both* parties were aware of the location of the press. While St. Croix could have inspected the press prior to "sealing" the agreement, Sexton declined any opportunity to inspect the press. At minimum, Sexton was fully aware of the danger in foregoing personal inspection and should have foreseen the possibility that the printer would not be in the same condition as was alleged, especially since such equipment is disassembled prior to shipping.

While a different outcome might present itself if this dispute concerned an unequal bargaining situation, the knowledge, skill and expertise concerning printing equipment in this case is comparable. Both parties stood on an equal footing. Rockwell's inclusion of the disclaiming clauses in the contract appear to effectively bar a claim for breach of express warranty. We affirm the trial court on this claim.

b. *Misrepresentation.*

The U.C.C. states:

> Unless displaced by the particular provisions of this chapter * * * the law relative to * * * fraud, misrepresentation * * * or other * * * cause shall supplement its provisions.

Minn.Stat. § 336.1–103 (1986); Ill.Rev.Stat. ch. 26, § 1–103 (1961).

The law in Minnesota would be distorted if, under the U.C.C., an action for fraud could not stand where the contract validly disclaimed all warranties. *Clements Auto Co. v. Service Bureau Corp.*, 444 F.2d 169, 181 (8th Cir.1971). Additionally, Minnesota conflicts law would apply tort law to such a claim. *Id.* at 175 n. 3 (quoting *Lowrey v. Dingmann*, 251 Minn. 124, 86 N.W.2d 499 (1957)). "The tendency is clearly to treat the misrepresentation action as a separate matter from the contract." Prosser & Keeton, *The Law of Torts* § 109 at 764 (5th ed. 1984). Moreover, *justifiable reliance* is essential to any form of relief for misrepresentation. *Id.* at 755 (emphasis added).

The law clearly provides that a misrepresentation claim can stand apart from a claim on the contract. In essence, when a party is suing for breach of warranty *and* misrepresentation, it is clear they are trying to get around the contract provisions. The question in this case is narrower; it concerns whether the reliance by St. Croix was justifiable under the circumstances.

The requirements for a valid claim of misrepresentation are:

(1) There must be a representation.

(2) That representation must be false.

(3) It must have to do with a past or present fact.

(4) That fact must be material.

(5) It must be susceptible of knowledge.

(6) The representer must know it to be false or, in the alternative, must assert it as of his own knowledge without knowing whether it is true or false.

(7) The representer must intend to have the other person induced to act or justified in acting on it.

(8) That person must be so induced to act or *so justified in acting.*

(9) That person's action must be in reliance upon the representation.

(10) That person must suffer damage.

(11) That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Weise v. Red Owl Stores, Inc.*, 286 Minn. 199, 202–03, 175 N.W.2d 184, 187 (1970) (emphasis added). The court continues:

> [W]here a party makes a representation which a signed document contradicts, the person to whom the representation was made is justified in relying on it when the document is *couched in ambiguous legal language which a layman could reasonably believe supported the representation.*

*Id.* at 203–04, 175 N.W.2d at 187 (emphasis added); *see also Midland National Bank v. Perranoski*, 299 N.W.2d 404, 412 (Minn. 1980) (where the supreme court suggests that justifiable reliance must take into account the specific intelligence and experience of the aggrieved party).

In *Johnson Bldg. Co. v. River Bluff Dev.*, 374 N.W.2d 187, 194 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. November 18, 1985), we held that reliance on an oral representation is unjustifiable as a matter of law only if the written contract directly contradicts the oral representation. We further stated that where there was not a direct contradiction between the prior oral representation and the terms of the written contract, the question of justifiable reliance was for the trier of fact. *Id.*

Following the *Johnson* standard, the resulting question is whether in this case the oral representations directly contradict the written agreement. Application of *Johnson* thus would result in a fact question.

Following *Weise*, summary judgment was inappropriate because a factual question results in determining "justifiable reliance" on the representations. St. Croix contends it has set forth facts sufficient to support its claim for misrepresentation.

On the other hand, as we have pointed out, the parties are both experienced in buying and selling used printing equipment and both are experienced in drawing up agreements with respect to the purchase and sale of such equipment. Arguably, St. Croix understood the consequences of a final written agreement.

As the cases indicate, an aggrieved party could recover on a claim for misrepresentation if that party could show that the reliance was justified. *See, e.g., Midland*, 299 N.W.2d at 412.

A determination that St. Croix was not substantially justified appears to us to raise a factual question.

While we acknowledge a strong case for summary judgment on this claim, we are inclined to let the jury determine whether the reliance was justifiable as it raises questions of material fact.

## DECISION

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.