**Joan Kay STOCK, Plaintiff,**

v.

**Randall R. HEINER, an individual; M. Cory Adams, an individual; Heiner and Stock Investments; and Heiner and Stock, Inc., corporations, Defendants.**

**Civ. No. 3–87–182.**

United States District Court,
D. Minnesota,
Third Division.

Oct. 5, 1988.

Stephen J. Foley, Meagher, Geer, Markham, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for plaintiff.

Scott E. Richter, Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., Minneapolis, Minn., for defendant Heiner

Richard H. Speeter, Speeter, Johnson, Hautman & Olson, Minneapolis, Minn., for defendant Adams.

Kenneth Corey–Edstrom, Curtin, Mahoney & Cairns, Minneapolis, Minn., for corporate defendants.

## ORDER

DEVITT, District Judge.

Currently pending in this case are summary judgment motions from each of the defendants as well as plaintiff's motion for partial summary judgment and dismissal of counterclaims. Based on the submitted memoranda, oral argument of counsel and all records, files and proceedings herein, the court finds as follows:

### Background

This lawsuit was brought by plaintiff Joan Stock against her former business associate, Randal Heiner, two businesses in which she held an interest—Heiner and Stock Investments and Heiner and Stock, Inc. (H and S)—and against an employee of these businesses, Cory Adams. Stock and Heiner were business associates in a brokerage business whose personal and professional relationship degenerated. Stock's interest in the business was sold to Heiner and Stock left the brokerage house for another position.

Stock alleges that the sale of her business interest was fraudulently induced and that Heiner both misrepresented and omitted important information in his dealings with Stock. Stock also alleges that after her departure from the brokerage house, all defendants embarked on a plan to defame Stock and interfere with the business relations between Stock and her customers.

Federal jurisdiction is based upon Stock's allegations of violations of federal securities laws as well as the RICO statute. Stock also asserts a number of pendent state claims. Defendants assert a number of counterclaims. Motions for summary judgment have been made as to each of these claims and counterclaims. Each is considered below.

### I. Federal Claims

#### A. Rule 10–b(5)

Stock alleges violation of the Securities Exchange Act stemming from misrepresentations made to her by Heiner in connection with the sale of her H and S stock. The corporate defendants move for summary judgment on this count on a number of grounds.

The corporate defendants first argue that Stock has failed to show the requisite jurisdictional means to prove a viola-

tion of Rule 10–b(5). This argument was raised a year ago in defendant's motion to dismiss this complaint. The court then found that Stock had presented evidence of the appropriate jurisdictional means and allowed an amendment of the complaint to allege those means. Corporate defendants provide no authority or argument that the means alleged are insufficient as a matter of law in support of their claim. In the absence of such argument or authority, the motion must be denied on this point.

Corporate defendants further argue that plaintiff's status as an insider and director of the corporation requires summary judgment because plaintiff cannot prove actual reliance or reasonable reliance on statements made by Heiner and there is no evidence of the necessary scienter on Heiner's part.

■ Through facts learned in discovery, plaintiff has presented evidence of withdrawals of cash by Heiner from H and S which Stock claims were never revealed to her. Stock further claims this was a material omission on Heiner's part which led her to misjudge the value of H and S and which influenced her decision to sell. Stock has presented sufficient evidence of a material omission by Heiner to raise a presumption of reliance for purposes of this motion. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). The court further concludes that there is sufficient evidence in the record to support a jury's conclusion that Stock's reliance was reasonable and that Heiner acted with the requisite intent.

Given the similar interpretation of federal Rule 10–b(5) and the corresponding state blue sky laws, the motion for summary judgment on the state securities act claim must also fail. *Austin v. Loftsgaarden*, 675 F.2d 168, 176 (8th Cir.1982).

## B. RICO

All three defendants argue that plaintiff's claims under the RICO statute are deficient. While many different arguments are forwarded, an argument made by all defendants, that the requisite "pat-

tern of racketeering activity" has not been shown, is dispositive.

■ In the Eighth Circuit the plaintiff must prove several predicate racketeering acts in furtherance of a common scheme and must also prove that defendant has committed the same or similar racketeering activity in the past, or is engaged in other criminal activities elsewhere, in order to satisfy the pattern requirement. *Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986). Thus, a plaintiff must prove the existence of two or more criminal schemes.

■ Recent decisions from the Eighth Circuit reveal that this requirement of proving multiple schemes is not easily satisfied. It is clear the "numerous predicate acts occurring over a long period of time do not, standing alone, constitute multiple illegal schemes." *Medical Inc. v. Angicor Ltd.*, 677 F.Supp. 1000, 1003 (D.Minn.1988) citing *H.J., Inc. v. Northwestern Bell Telephone Co.*, 829 F.2d 648 (8th Cir.1987). Furthermore, an array of fraudulent activities, including check-kiting, diversion of corporate assets and preparation and distribution of false financial statements, perpetrated for pecuniary gain constitute but one scheme. *Madden v. Gluck*, 815 F.2d 1163, 1164 (8th Cir.1987).

■ Stock claims that the pattern requirement is met because she alleges several predicate acts by Heiner, Adams, and H and S which were intended to injure plaintiff in her business and property along with allegations that other schemes existed and are proved by fraudulent misrepresentations made to H and S customers to induce the purchase or sale of stock. The fact that the alleged acts may have victimized many unrelated parties does not lead to the conclusion that multiple schemes existed. *Gluck*, 815 F.2d at 1163. Consequently, defendants are entitled to summary judgment on the RICO claims, counts 11, 12 and 13.

## II. Pendent Claims

### A. Defamation

Defendant Adams, the corporate defendants and plaintiff move for summary judg-

ment on plaintiff's defamation claim. Plaintiff claims that the undisputed facts establish defamation of plaintiff as a matter of law. Defendants claim that the alleged defamatory statements are not defamatory because they are not "of or concerning plaintiff," or are true, or are mere expressions of opinion.

The alleged defamatory statements may be divided into two classifications: 1) statements made by H and S employees about Med Venture stock to customers of plaintiff, and 2) statements about Stock by Adams. The parties agree that after her departure from H and S, employees, particularly Adams, began contacting Stock's clients. Stock alleges that in these contacts H and S employees made untrue statements about Med Venture and its financial prospects which defamed her by innuendo. Stock also alleges that defamatory remarks were made directly about her in several of these contacts.

### 1. Statements regarding Med Venture

Defendants argue that any statements about Med Venture could not have defamed Stock because they are not "of or concerning" her. Clearly, in order to be defamatory any statements made by defendants must concern plaintiff, not another. *Brill v. Minnesota Mines, Inc.*, 200 Minn. 454, 274 N.W. 631 (1937). Language which is vague and cannot be said to refer to a particular person is not actionable. *Petsch v. St. Paul Dispatch Printing Co.*, 40 Minn. 291, 41 N.W. 1034 (1889).

■ In recommending to Stock's customers that they sell their holdings in Med Venture, H and S employees made a number of disparaging comments about the company and its financial prospects. However, none of the alleged statements about Med Venture refer so clearly to Stock that they can support a defamation claim by her.

### 2. Statements regarding Stock

Plaintiff alleges that defendant Adams made statements specifically about Stock which were defamatory. These statements were made to two individuals, Greg Perrella and Harry A. Allen.

### a. Statements made to Perrella

The conversation with Perrella consists mainly of statements regarding Med Venture and its financial prospects which, for the reasons discussed above, cannot be considered defamatory. However, in the course of this conversation, Adams allegedly told Perrella that Stock had "misquoted" the price of Med Venture stock to another customer and later "admitted to her lie." Defendant Adams argues that this is not a defamatory statement because Adams was merely repeating what had been relayed to her by a third party and because the statement is merely opinion.

■ The determination of whether a statement expresses fact or opinion is for the court. *Lauderback v. American Broadcasting Companies*, 741 F.2d 193, 196 n. 6 (8th Cir.1984) cert. denied, 469 U.S. 1190, 105 S.Ct. 961, 83 L.Ed.2d 967 (1985). In order to make this determination, the court must look to the totality of the circumstance to determine whether a statement may be actionable. *Price v. Viking Press, Inc.*, 625 F.Supp. 641, 646 (D.Minn. 1985). Factors which are to be considered are:

(a) the precision and specificity of the disputed statement (the more imprecise, the more likely opinion);

(b) the statement's verifiability (the less verifiable, the more likely opinion);

(c) the literary and social context in which the statement was made (including the entire communication's tone, the use of cautionary language, the category of publication, its style of writing and intended audience); and

(d) the statement's public context (consideration of the public or political arena in which the statement was made).

*Janklow v. Newsweek, Inc.*, 788 F.2d 1300 (8th Cir.) cert. denied, 479 U.S. 833, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986).

■ Considering the statement in light of these factors, the court concludes that it

is more properly considered a statement of fact than opinion. It is a specific accusation of wrongdoing which could be verified. No cautionary language preceded the statement. Furthermore, the context of the statement, a conversation by Adams urging Perrella to sell stock plaintiff had recommended, supports the conclusion that it was advanced as fact rather than opinion. Thus, a fact question of whether the statement was defamatory exists which must be determined by a jury.

Adams' claim that the statement is not defamatory because she was merely reporting information received from a third party cannot be accepted on this motion for summary judgment. Adams can be held liable for republication of defamatory statements as if she had made the statement herself. *Price*, 625 F.Supp. at 645. To the extent that Adams espoused or concurred in the statements earlier expressed to her, she may be held to have assumed responsibility for those statements. *Edwards v. National Audubon Society, Inc.*, 556 F.2d 113, 120 (2d Cir.1977).

### b. Statements made to Allen

Plaintiff alleges Allen was also contacted by Adams and encouraged to sell his holdings in Med Venture. Plaintiff further alleges that Adams made defamatory remarks about plaintiff to Allen in the course of these contacts.

Adams denies making statements about Stock as testified to by Allen in his deposition. However, for purposes of this motion, Adams accepts the deposition testimony and argues that Allen's testimony only reveals disparaging or unflattering remarks about Med Venture. Thus, argues Adams, the testimony could not support a finding of defamation.

The corporate defendants argue that Allen's inability to recall the exact language used by Adams prevents a defamation claim as a matter of law. *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698–99 (8th Cir.1979); *Pinto v. Internationale Set, Inc.*, 650 F.Supp. 306, 309 (D.Minn. 1986).

The deposition testimony of Allen clearly indicates that Adams remarks were not limited to a discussion of Med Venture and included specific references to Stock. While Allen in this deposition stated that he felt he could not accurately quote Adams' remarks due to the passage of time, he testified that Adams indicated that Stock had misrepresented Med Venture and had cheated her customers. Allen depo. at 19.

Corporate defendants' argument that the defamation claim cannot be supported by this testimony due to Allen's failure to testify as to Adams' exact spoken words, is not supported by the authority cited. Both *Asay* and *Pinto* recognize that a degree of specificity is required to support a defamation claim but neither holds that a recitation of the exact language of a defamatory statement is necessary to survive a motion for summary judgment.

■ Given the fact that approximately two years passed between the time of the alleged statements and the deposition of Allen, it is not surprising that Allen expressed an inability to recall the conversation verbatim. The testimony of Allen is not vague and conclusory; it outlines the approximate time the alleged statements were made, to whom, by whom, and reports the substance of the conversation. Allen's recollection of the conversation appears to be good and cross-examination of Allen did not conclusively demonstrate that Allen's memory of Adams' statements was insufficient to support the defamation claim.

### B. Unfair and Deceptive Trade Practices

Plaintiff alleges a violation of Minn.Stat. § 325D.44, prohibiting unfair and deceptive trade practices. Plaintiff, the corporate defendants and Adams each argue that this claim is similar to the defamation claim and revolves on the same facts. Each further argues that since it is entitled to summary judgment on the defamation claim, summary judgment on this claim necessarily follows. Given the finding that fact issues remain to be resolved on the defamation

claim, the motions for summary judgment on this claim are denied.

### C. Breach of Fiduciary Duty

Stock alleges in Count 1 of the complaint a breach of a fiduciary duty arising from a confidential relationship. Specifically, Stock alleges that Heiner breached a duty to her in his dealings with both her and the corporate entities. Defendant Heiner argues in response that no fiduciary duty was owed and that, in any event, there was no breach.

Heiner argues that the fiduciary duties owed by an officer, director or controlling shareholder do not extend to personal transactions involving the sale or purchase of stock. *Seitz v. Frey*, 152 Minn. 170, 188 N.W. 266 (1922). This argument fails to recognize the distinction in Minnesota law between a publicly and a closely held corporation. In *Evans v. Blesi*, 345 N.W.2d 775 (Minn.App.1984), the Minnesota courts recognized that many closely held corporations operate much like a partnership and imposed fiduciary obligations on shareholders in closely-held corporations.

■■■ Contrary to Heiner's assertions, the holding in *Blesi* has not been "narrowed to its facts." Indeed, the court in *Harris v. Mardan Business Systems, Inc.*, 421 N.W.2d 350 (Minn.App.1988), amplified the *Blesi* holding:

> Minnesota clearly recognizes and enforces a duty among shareholders in a close corporation. *Fewell v. Tappan*, 223 Minn. 483, 493–94, 27 N.W.2d 648, 654 (1947), cited in *Evans v. Blesi*, 345 N.W. 2d 775, 779 (Minn.Ct.App.1984).... Reliance on partnership principles is appropriate since many close corporations are in substance partnerships by another name. Because partners owe a fiduciary duty to other partners, shareholders in a close corporation owe a similar duty.

*Id.* at 353. As a shareholder in a closely-held corporation, Heiner owed a fiduciary duty to Stock. Whether a breach occurred is a question of fact which remains to be resolved.

### D. Fraud

■■■ In Count two of the complaint Stock alleges that Heiner made fraudulent statements to the effect that he would protect plaintiff's interests. Corporate defendants contend that because the alleged misrepresentations are all statements of either future intention or prediction they do not support a claim of fraud. *Weise v. Red Owl Stores, Inc.*, 286 Minn. 199, 202–203, 175 N.W.2d 184, 187 (1970). However, the complaint alleges that Heiner told Stock she "could rely upon him to effectively manage The Corporation and The House to the best interests of all concerned." Third Amended Complaint, para. 53. This and other allegations of the complaint present representations of present intention which are actionable if the representor had no intention of following through when the statement was made. *Johnson Bldg. Co. v. River Bluff Development*, 374 N.W.2d 187, 194 (Minn.App.1985). The motions for summary judgment must be denied as to this count.

### E. Promissory Estoppel

Plaintiff asserts a claim of promissory estoppel in the third count of the complaint. Plaintiff alleges that she relied to her detriment upon all the statements and assurances by Heiner and that, consequently, Heiner and the corporate entities are estopped from "denying the [alleged] statements," "contesting plaintiff's reliance," or claiming that the parties "Stock Purchase Agreement" contains the complete agreement of the parties.

■■■ Corporate defendants allege that they are entitled to summary judgment on this claim because the vague allegations of the complaint do not justify the implication of a contract under the theory of promissory estoppel. Defendants correctly argue that the doctrine of promissory estoppel is used to imply the existence of a contract where one party has detrimentally relied on the promise of another. *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 115, 116 (Minn.1981). This count of the complaint appears to anticipate a defense based on the parol evidence rule and the current

record reveals no facts which support a claim of promissory estoppel. Summary judgment for defendants on this count is granted.

## F. Unjust Enrichment

The corporate defendants move for summary judgment on plaintiff's claim of unjust enrichment on the grounds that plaintiff may not invoke the doctrine to recover damages incurred simply because she had made a "bad bargain." *Cady v. Bush,* 283 Minn. 105, 166 N.W.2d 358 (1969). However, defendants recognize that the doctrine may be invoked in cases of actionable fraud. Since the court has denied the defendants' motions for summary judgment on the fraud claim, by defendants' own admission, summary judgment in favor of corporate defendants on this claim is inappropriate.

Defendant Adams moves for summary judgment on the unjust enrichment claim on the basis that the plaintiff's defamation claims against her cannot be proved. Based on the discussion of those claims above, Adams' motion is denied.

## G. Mistake

In Count five of the complaint plaintiff seeks rescission of the sale agreement between plaintiff and Heiner on the ground of mistake. The corporate defendants move for summary judgment on this count and in reply plaintiff waives her claim for rescission. The motion is therefore, granted.

## H. Tortious Interference with an Existing Economic Advantage

 Plaintiff alleges a tortious interference with an existing economic advantage in Count eight of the complaint based on the actions of Adams, Heiner and the corporate defendants in contacting her clients. The corporate defendants allege that their actions are protected by a competitive privilege. *United Wild Rice, Inc. v. Nelson,* 313 N.W.2d 628 (Minn.1982). However, the privilege espoused in *United Wild Rice* does not extend to acts that are wrongful

and the corporate defendants' motion must be denied. *Id.* at 633.

 Defendant Adams argues that the claim of wrongful interference is based on Adams' alleged defamation of Stock and thus, the interference action is subsumed by the defamation claims. However, the authority cited in support of this argument, *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775 (1975), does not hold that a wrongful interference claim cannot be maintained in addition to an action for defamation. Defendant Adams' motion for summary judgment on this claim is denied.

## I. Conspiracy

Plaintiff alleges a conspiracy in Count ten of the complaint between Heiner, Adams and the corporate defendants for the purpose of defaming plaintiff. Plaintiff also alleges a conspiracy between Heiner and the corporate entities for the purpose of fraudulently obtaining her interest in the brokerage house. All defendants maintain that summary judgment should be granted on this claim because the alleged conspiracy cannot exist as a matter of law.

 Under Minnesota law, a corporation cannot conspire with itself. *Griebel v. J.R. Case Credit Corp.,* 285 F.Supp. 621 (D.Minn.1968). All the actions alleged by plaintiff were committed by agents of the corporate defendants on their behalf. Thus, the claimed conspiracy could not have existed. Cf. *Bond v. IFMS, Inc.,* 727 F.2d 770, 771 (8th Cir.1984); *Baker v. Stuart Broadcasting Co.,* 505 F.2d 181 (8th Cir.1974); *John Peterson Motors, Inc. v. General Motors Corp.,* 613 F.Supp. 887, 897 (D.Minn.1985). Defendants' motions are granted with respect to this count.

## J. Punitive Damages

The corporate defendants and Adams argue that plaintiff's claim for punitive damages must be dismissed due to plaintiff's failure to follow Minn.Stat. § 549.191. This section requires a plaintiff to make a motion to amend the pleadings to include a claim for punitive damages.

■] This court held in *Fournier v. Marigold Foods, Inc.*, 678 F.Supp. 1420 (D.Minn.1988), that Minn.Stat. § 549.191 applied to diversity actions in this court where Minnesota law controlled. The Erie doctrine, upon which the *Fournier* decision rests, is equally applicable in this non-diversity case. *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 540 n. 1 (2d Cir.1956). Thus, the holding in *Fournier* is applicable here. However, the instant action was originally filed over one and one half years ago. To require dismissal of the punitive damages claim at this late stage in the proceedings, after the claim has survived a Rule 12(b) motion to dismiss and upon the record as presented constituted, would be an exercise in futility. Consequently, *Fournier* will not be applied retroactively in this case. The defendants' motion is denied with respect to this count.

## III. Counterclaims

### A. Defendant Heiner

■] Plaintiff argues in her motion for partial summary judgment and dismissal of counterclaims that Heiner has no standing to assert several of his counterclaims and that they are properly brought by the corporate defendants. Defendant Heiner has responded to this argument by acknowledging that the counterclaims he asserts are all properly advanced by the corporate defendants and has attempted to dismiss these claims by filing a notice of dismissal. Plaintiff objects to the voluntary dismissal as improper.

Because the plaintiff has filed a reply to Heiner's counterclaims, voluntary dismissal is unavailable to Heiner. However, the court agrees that Heiner has no standing to assert the counterclaims and grants plaintiff's motion on this basis. Thus, the objection to the dismissal is moot.

### B. Defendant Adams
#### 1. Defamation

■ In the first count of her counterclaim, Adams alleges that plaintiff defamed Adams. Plaintiff moves for summary judgment on this counterclaim on the basis

that Adams has failed to produce any evidence in support of the claim. Adams responds by pointing to her deposition testimony and answers to interrogatories which identify a number of statements which Adams claims defamed her. If proved at trial these allegations would support her claim of defamation. Plaintiff's motion is denied as to this count.

#### 2. Bad Faith

■] Adams' second and third counterclaims allege bad faith on plaintiff's part, justifying costs and sanctions. Adams has not provided sufficient proof of bad faith to support a finding that this action was brought for purposes of harassment or to extract settlement. Minn.Stat. § 549.21. Consequently, plaintiff's motion is granted with respect to Adams' second and third counterclaims.

### C. Corporate Defendants
#### 1. Mutual Mistake

Plaintiff alleges that the corporate defendants have produced no evidence to show a material mistake of fact has been made. Corporate defendants waive any claims based on mistake. The motion for summary judgment is, therefore, granted on this counterclaim.

#### 2. Breach of Fiduciary Duty as a Director

■ The corporate defendants allege in their second counterclaim a breach of Stock's duties as a director by her failure to obtain a valuation of her stock before selling to Heiner and her subsequent suit against the corporation. Because plaintiff was no longer a director at the time this suit was instituted, she was under no fiduciary duty to defendants and could not be deemed to have breached a duty by filing this suit. The claim, therefore, rests on the allegation that Stock had a fiduciary duty as an officer of the corporation to conduct a valuation of her shares before selling them. Corporate defendants cite no authority in support of this novel claim.

A review by the court of Minnesota law regarding the fiduciary obligations of di-

rectors revealed no precedent which would support defendants' claim. The court finds that the corporate defendants' second counterclaim must be dismissed for failure to state a claim upon which relief may be granted.

### 3. Breach of Fiduciary Duty as an Officer

In their third counterclaim the corporate defendants allege that plaintiff breached her fiduciary duties as an officer by failing to adequately conduct due diligence responsibilities with respect to Med Venture. Essentially, defendants allege that Stock was negligent in her continuing recommendation to clients that they hold or purchase Med Venture stock in light of information which Stock knew or should have known which made this recommendation faulty. Plaintiff claims that she could not have known the extent of Med Venture's financial difficulties until after her departure in November of 1985 because Med Venture's revised financial statements were not released until December of 1985.

■ While many of the facts asserted in support of this claim are speculative, the court concludes that the record as a whole presents sufficient evidence to allow a jury to find that Stock negligently failed to revise her recommendation of Med Venture, causing harm to the corporate defendants. Plaintiff's motion is denied as to this counterclaim.

### 4. Intentional Interference with Contractual Relations

■ Defendants allege in their fourth counterclaim that plaintiff intentionally interfered with their contractual relations by improperly soliciting clients of the corporation and by making false and disparaging comments about Heiner and the corporate defendants.

Contrary to plaintiff's assertion that there is no factual basis for these claims, the affidavits of Randall Heiner and James Peterson and a letter from John Birch provide enough support for these claims to survive a motion for summary judgment.

### 5. Corporate Waste

The corporate defendants' final counterclaim alleges corporate waste due to Stock's alleged intimidation of subordinate personnel at the brokerage firm. The defendants' allege that Stock's intimidation of other brokers caused an excessively high rate of turnover and resulted in additional training costs to the firm.

Plaintiff argues that Stock's managerial style, absent discriminatory practices or other illegal behavior, gives rise to no cause of action. Again no authority is cited by corporate defendants in support of a novel legal theory.

■ The only evidence produced in support of this claim is statistics which indicate that, on average, brokers remained at the brokerage house longer after the plaintiff's departure than before. Defendants have identified no individual who claims he or she left the brokerage house because of Stock's managerial practices. The court concludes that even if defendants have stated a claim upon which relief may be granted, that there is insufficient evidence to support the claim. Plaintiff's motion for summary judgment is granted with respect to this counterclaim.

## IV. Other Issues

■ In his Brief in Support of Motion for Summary Judgment, defendant Heiner raises two issues regarding his personal liability. Heiner first argues that he cannot be found personally liable for the acts of agents of H and S unless he was personally involved in the wrongful conduct. Heiner further argues that there is no evidence of personal involvement on his part. However, in her deposition defendant Adams testified that Heiner was present during the hundreds of calls she made to plaintiff's customers. This is evidence of personal involvement which precludes a finding that Heiner may not be held liable for Adams' conduct as a matter of law.

■ Heiner next argues that he may not be held liable for the acts of the corporate defendants on the theory of piercing the corporate veil. The court finds that

questions of fact exist with respect to the factors which are relevant to the issue of whether or not the corporate veil may be pierced in this case.

Based on the foregoing, IT IS ORDERED THAT:

1. Summary judgment be entered in favor of defendants with respect to counts 3, 5, 10, 11, 12 and 13;

2. Summary judgment be entered in favor of plaintiff with respect to all counterclaims asserted by defendant Heiner;

3. Summary judgment be entered in favor of plaintiff with respect to defendant Adams' counterclaims numbered 2 and 3;

4. Summary judgment be entered in favor of plaintiff with respect to the corporate defendants counterclaims numbered 1 and 5; and that corporate defendants' second counterclaim be dismissed.