**STATE of Minnesota, By Hubert H. HUMPHREY, III, its Attorney General, Respondent,**

v.

**ALPINE AIR PRODUCTS, INC., et al., Petitioners, Appellants.**

No. C8–92–740.

Supreme Court of Minnesota.

May 21, 1993.

William A. Erhart, Marvin & Erhart, Anoka, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Tracy M. Smith, Sp. Asst. Atty. Gen., St. Paul, for respondent.

TOMLJANOVICH, Justice.

In this case we must decide the standard of proof to be applied in consumer fraud litigation. After a bench trial, Alpine Air Products ["Alpine"] and its president, William Converse were found liable for violations of Minnesota's False Statement in Advertising Statute,[1] Uniform Deceptive Trade Practices Act,[2] and Prevention of Consumer Fraud Act.[3] The trial court applied a preponderance of the evidence standard and awarded a civil penalty. The court of appeals affirmed the use of this standard and the constitutionality of the

penalty. *State by Humphrey v. Alpine Air Products, Inc.,* 490 N.W.2d 888 (Minn. App.1992). We agree with the lower courts and affirm.

Alpine manufactures portable "air purifiers" marketed on the theory that they emit ozone in order to clean indoor air. Ozone is a highly reactive form of oxygen. At trial, expert witnesses testified that when present above certain levels, ozone may not benefit but rather irritate the respiratory system. The experts testified that ozone may damage cells lining the respiratory system, thus causing chest tightness, chest pain, coughing and reduced lung function.

The level at which ozone may begin to cause adverse health effects was disputed at trial. The trial court, believing the state's experts, found that ozone above .05 parts per million could cause adverse health effects. It is undisputed that Alpine's purifiers are capable of emitting levels of ozone in excess of .05 parts per million. The experts at trial concluded that Alpine's purifiers were capable of emitting ozone in the .20–2.00 ppm range.

The trial court found that petitioners represented that their machines emit only safe levels of ozone—advertisements and promotional literature represented that the ozone emitted by the machine is a harmless "type" of ozone. In a promotional videotape, petitioner Converse represented that "there is absolutely no indication at all that there are any adverse effects of ozone in the levels that Alpine can produce." The trial court found these representations to be false.

Also at issue was whether the operating instructions for the air purifiers were adequate to insure safe levels of ozone. The operating instructions stated that the ozone levels would be similar to those found naturally in unpolluted air—less than .05 ppm. Alpine purifiers, however, have no mechanism for regulating ozone production. Converse testified that Alpine purifiers have a control knob that allows the user to

---

1. Minn.Stat. § 325F.67 (1992).

2. Minn.Stat. §§ 325D.43–.48 (1992).

3. Minn.Stat. §§ 325F.68–.70 (1992).

generate increasing amounts of ozone. The machines, however, have no means of measuring the amount of ozone emitted, and the control knob is not calibrated so that the user may set and control ozone levels. Nor do the machines have a shut-off or warning mechanism to avoid excessive levels of ozone.

Alpine advised consumers to set the machines by their sense of smell. In the operating manual, it told consumers to turn up the ozone if they could not smell it. The manual also stated that in the presence of a "severe odor or pollution situation," consumers should set the machine at maximum levels for several hours or until the user could smell the "strong level" of ozone throughout the room. Alpine made representations that as long as the purifiers were operated according to the sense of smell, ozone levels would not exceed .02 to .03 ppm. The state's experts testified that this "smell test" is inadequate to ensure that ozone levels do not become harmful because ozone levels could be harmful without being detectable: Most people cannot smell low levels of ozone and people's sense of smell varies. In addition, competing odors can mask the smell of ozone. In such instances, ozone will remain undetectable until it reaches higher levels.

Using the preponderance of the evidence standard, the trial court found that the appellants had violated the consumer protection statutes.[4] The court ordered injunctive relief, including full restitution to customers, civil penalties of $70,000 and awarded $104,165.20 in attorney fees to the state.

## I.

■ In general, the legislature has the power to determine the standard of proof in a statutorily created cause of action. *See Steadman v. SEC*, 450 U.S. 91, 96 n. 10, 101 S.Ct. 999, 1005 n. 10, 67 L.Ed.2d 69 (1981) (if federal Congress does not indicate standard of proof, resolution of issue is one of legislative intent). When the legislature says nothing about the standard of proof to

be used, this is regarded as a signal that the legislature intended the preponderance of the evidence standard. *Cf. Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (noting that federal Congress' silence on standard of proof issue is inconsistent with the view that it intended higher standard of proof).

■ In passing consumer fraud statutes, the legislature clearly intended to make it easier to sue for consumer fraud than it had been to sue for fraud at common law. The legislature's intent is evidenced by the *elimination* of elements of common law fraud, such as proof of damages or reliance on misrepresentations. *See, e.g.,* Minn. Stat. § 325D.45, subd. 1. We believe this elimination of elements indicates that the legislature intended that the burden of proof in a consumer fraud case would be the preponderance of the evidence standard. We will not impute to the legislature the strange goal of making it easier to sue for consumer fraud by eliminating elements required at common law, while at the same time insisting on a higher standard of proof than that generally used in civil cases. For these reasons, we believe the legislature intended the preponderance of the evidence standard.

Minnesota common law also favors the use of the preponderance of the evidence standard in a civil fraud case. Petitioners argue that because the relief ordered in this case was the equitable remedy of restitution, the clear and convincing standard of proof should apply.

Historically, Minnesota did maintain two separate standards of proof in fraud cases. In a common law case for damages, the plaintiff was required to prove the case by a fair preponderance of the evidence; in cases seeking equitable relief, such as reformation or rescission of a written instrument on the basis of fraud, the standard of proof was the higher clear and convincing standard. *Schmeisser v. Albinson*, 119

---

**4.** The trial court also found that the petitioners had violated the anti-trust statute. The court of appeals affirmed that ruling and it has not been appealed to this court.

Minn. 428, 432, 138 N.W. 775, 776 (1912).[5]

In 1926, we firmly rejected this distinction stating:

We do not think there is any difference in the quantum of proof required in an action to recover damages for misrepresentations as to the subject matter of a contract and in a suit to rescind the same contract for the same misrepresentations inducing its making. In both a fair preponderance of the evidence justifies relief.

*Mandel v. Brooks,* 165 Minn. 490, 491, 206 N.W. 727 (1926). In 1968, we reaffirmed *Mandel:*

While the post-Mandel cases have not always been consistent, most have abandoned the distinction and have followed the view that a "fair preponderance of the evidence" justifies relief in either a suit for rescission or one for damages based on fraud in the inducement.

*Martin v. Guarantee Reserve Life Ins. Co.,* 279 Minn. 129, 136, 155 N.W.2d 744, 749 (1968).

In 1970, in direct contrast to the holding in *Martin,* we said, "[f]raud must be proved by clear and convincing evidence, especially where a party seeks to avoid the effects of a written instrument." *Weise v. Red Owl Stores, Inc.,* 286 Minn. 199, 203, 175 N.W.2d 184, 187 (1970). We are inclined to believe that this language was inaccurately used, and not a holding intended to disturb a trend that had been started fifty years before and affirmed two years previously. The authority the *Weise* court cited for the higher standard of proof was *Nelson v. Berkner,* 139 Minn. 301, 166 N.W. 347 (1918). Thus *Weise* cited pre-*Mandel* precedent and was simply wrong in that regard. In addition, we find it hard to believe that this court intended to overrule cases it did not even mention in its opinion.

Today we reaffirm *Martin* and *Mandel.* We overrule *Weise* to the degree it is inconsistent with those two cases. We hold that unless otherwise indicated by the legislature, the standard of proof in all fraud cases is the preponderance of the evidence standard. The lower courts properly applied the preponderance of the evidence standard.[6]

## II.

█ Petitioners also argue that the Due Process Clause requires that the standard of proof in a consumer fraud action be the clear and convincing evidence standard. The Supreme Court has read the Due Process Clause to require the higher standard of proof in a small class of cases involving particularly important individual interests. *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (clear and convincing standard is required before parental rights may be terminated); *Addington v. Texas,* 441 U.S. 418, 432–33, 99 S.Ct. 1804, 1812–13, 60 L.Ed.2d 323 (1979) (higher standard required for involuntary commitment); *Woodby v. INS,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966); (deportation order) *Chaunt v. United States,* 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960) (revocation of citizenship).

In discussing why the standard of proof should be higher in some cases than in others, the Supreme Court has reasoned that the higher standard of proof expresses an interest for one side's interests over the others. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 390, 103 S.Ct. 683, 691, 74 L.Ed.2d 548 (1983). Thus it is only used when a right of particular importance is at stake. When defining what types of interests trigger the higher standard of proof, the Court has emphasized that the loss involved must be more than money. *Santosky,* 455 U.S. at 756, 102 S.Ct. at 1396.

---

**5.** Somewhat inconsistently, later in the same opinion we said, "Where the issue of fraud is submitted to a jury, it is within their province to draw conclusions from facts established by a fair preponderance of the evidence." *Id.* 119 Minn. at 443, 138 N.W.2d at 777. If this inconsistency demonstrates anything to us, it is that we must state a clear rule.

**6.** We also note that although equitable relief was ordered, this case was clearly not an equitable case to rescind or reform a contract. Thus even under the older case law making the distinction between the two types of cases, the preponderance of the evidence standard might well have been the appropriate standard to use in this case.

The Court has approved the use of the preponderance of the evidence standard in situations where fraud has been alleged. In *Huddleston,* a civil securities fraud case, Justice Marshall wrote for an 8–0 Court:

> The balance of interests in this case warrants use of the preponderance standard. On the one hand, the defendants face the risk of opprobrium that may result from a finding of fraudulent conduct, but this risk is identical to * * * [other actions] governed by the preponderance-of-the-evidence standard. The interests of defendants in a securities case do not differ qualitatively from the interests of defendants sued for violations of other federal statutes such as the antitrust or civil rights laws, for which proof by a preponderance of the evidence suffices. On the other hand, the interests of plaintiffs in such suits are significant. Defrauded investors are among the very individuals Congress sought to protect in the securities laws. If they prove that it is more likely than not that they were defrauded, they should recover.

459 U.S. at 390, 103 S.Ct. at 691.

We believe this case is indistinguishable from *Huddleston* which clearly holds that the Due Process Clause does not require a higher standard of proof in fraud cases. It follows that use of the preponderance of the evidence standard in consumer fraud cases comports with constitutional guarantees of due process.

### III.

■ Petitioners also argue that the assessment of the civil penalty converted it from a civil into a quasi-criminal action and that this mandates use of the clear and convincing evidence standard. In determining whether an action is "criminal or civil," the intent of the legislature and the purpose of the penalty controls. *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). The Supreme Court has emphasized that only upon the "clearest proof" will the assessment of a penalty convert a civil action into a criminal one. *Id.* at 249, 100 S.Ct. at 2641.

If a civil penalty is punitive and not regulatory, the Supreme Court has held that a higher clear and convincing standard of proof must be used. *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). The Supreme Court listed several factors to be considered in determining whether a sanction is punitive or regulatory:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only upon a finding of *scienter,* whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

*Id.* at 168–69, 83 S.Ct. at 567 (citations omitted). The civil penalty in this case does not provide a restraint. (The punishment at issue in *Mendoza–Martinez* was a deportation and denial of a passport to persons who had lost citizenship by remaining outside the jurisdiction of the United States to avoid military service during wartime). Although the payment of a fine is surely "punishment" of a sort, historically payment of money has been viewed as serving nonpunitive purposes. *See United States v. Ward,* 448 U.S. at 254, 100 S.Ct. at 2644 (the penalty imposed by section 311(b)(6) of the Federal Water Pollution Control Act more closely resembles an award of damages than a criminal punishment). Application of the other factors also lead us to the conclusion that the penalty imposed in this case was civil and not criminal in nature. Scienter is not required to assess a civil penalty. Hopefully, payment of a civil penalty will both specifically and generally deter similar conduct. The civil penalty also furthers a legitimate purpose other than punishment: it lowers the incentive to engage in consumer fraud and thus aids the state in enforcement of the statute.

■ Nor does the civil penalty imposed in this case seem excessive given the harm caused and the amount of the restitution ordered by the trial judge. The amount was minimal—$70,000—in relationship to the value of the restitution ordered—approximately $64 million if all the customers are successfully contacted and choose to exercise their right to have Alpine repurchase the air purifiers. This further convinces us that the purpose of the penalty in this case was to aid enforcement. of the statute, not to punish petitioners.

Petitioners also argue that because there is potential criminal liability under the consumer fraud statutes—Minn.Stat. § 325F.67 declares violation of the statute a misdemeanor—the burden of proof in this civil action should be the higher clear and convincing standard. Possible criminal liability does not magically transform the standard of proof in a civil suit merely because it is based upon the same conduct. *See, e.g., Huddleston,* 459 U.S. at 389–90, 103 S.Ct. at 691 (preponderance of the evidence standard suffices in civil suit although same acts may subject party to criminal prosecution).

Petitioners also ask us to rely on *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804 to find that the constitution requires that the higher standard of proof applies in this case. *Addington* requires no such thing. In discussing the clear and convincing evidence standard, the Court remarked as follows:

> One typical use of the standard is in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce the

risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof. Similarly, this Court has used the "clear, unequivocal and convincing" standard of proof to protect particularly important individual interests in various civil cases. *Id.* at 424, 99 S.Ct. at 1808 (citations omitted). This language is a far cry from a constitutional command that the clear and convincing standard must be used in fraud cases. The language appears to mean that the standard of proof in a fraud case does not need to be higher than preponderance of evidence, although the individual states are free to use a higher standard depending upon the views of their legislatures and common law traditions.[7] Neither the legislative history of the statutes nor our common law support the use of a higher standard of proof in fraud cases.

IV.

Petitioners also challenge the trial judge's factual findings and assessment of the civil penalty. They did not, however, raise these issues in the petition for further review to this court. The rules of appellate procedure require that petitioners identify all issues that they wish reviewed. Minn. R.Civ.App.P. 117, subd. 3(a). Following our admonition in *Hapka v. Paquin Farms,* 458 N.W.2d 683, 686 (Minn.1990), that petitioners must identify the issues they wish us to hear, we decline to hear those issues not raised in the petition.

The trial court properly applied the preponderance of the evidence standard.

Affirmed.

---

7. Petitioners also argue that *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and progeny require a higher standard of proof in this case. These cases involve the adequacy of preliminary procedures required pending a full hearing when the government infringes a liberty or property interest. As Justice Frankfurter said in his seminal concurrence in *Joint Anti-Fascist Refugee Committee v. McGrath:*

> This Court is not alone in recognizing that the right to be heard before being condemned

to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.
341 U.S. 123, 168, 71 S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

These cases are not applicable. Petitioners cannot argue that they have been erroneously deprived of a preliminary hearing—they were given **a trial** before any constitutionally recognized property or liberty interest was infringed. Thus this line of cases does not apply.