**In re the Marriage of Lela Diane KORN-BERG, a/k/a Lila Diane Kornberg, Petitioner, Appellant,**

v.

**Harvey KORNBERG, Respondent.**

**No. C5–94–1008.**

Supreme Court of Minnesota.

Jan. 19, 1996.

Robert J. Levy, Ronald S. Goldser, Zimmerman Reed, Minneapolis, for appellant.

Jerrold F. Bergfalk, Charles J. Lloyd, Minneapolis, for respondent.

## OPINION

ANDERSON, Justice.

Appellant Lela Kornberg challenges the authority of a successor judge to reconsider the ruling of a predecessor judge in the same case. The district court in this case entered a judgment and decree pursuant to a stipulated settlement in a dissolution matter. Lela Kornberg moved to have the judgment and decree vacated on a number of grounds, including fraud and failure of consideration. The judge who heard the motion vacated the judgment and decree, and then retired from the bench. A successor judge was assigned to the case. Respondent Harvey Kornberg moved the court to reconsider the earlier motion to vacate, and after hearing the motion to reconsider, the successor judge reinstated the original judgment and decree. Lela Kornberg appealed, arguing that the successor judge did not have the authority to reconsider the predecessor judge's ruling. The Minnesota Court of Appeals held that the successor judge had the authority to reconsider the ruling of a predecessor judge, and that the successor judge did not err in reinstating the original judgment and decree. We affirm.

Appellant Lela Kornberg and respondent Harvey Kornberg were married on June 25, 1958 in Winnipeg, Manitoba, Canada. They resided together in Winnipeg as husband and wife until, in the fall of 1987, they separated and Harvey Kornberg moved to a rental apartment in Winnipeg. While they still resided together, the parties made application for permanent residency in the United States. Harvey Kornberg expressly stated on his application that it was his intent to establish a home in Minnesota. Lela Kornberg retained her domicile in Canada, but

Harvey Kornberg received an Alien Registration Receipt Card, commonly referred to as a "green card," granting him permanent resident status in the United States and, after October 1987, established and continuously maintained residences in Minnesota. On March 3, 1989, Harvey Kornberg signed a purchase agreement for a home in Minnesota.

In September 1989, Lela Kornberg commenced marriage dissolution proceedings in Hennepin County District Court. Harvey Kornberg subsequently commenced dissolution proceedings in the Province of Manitoba and contested the jurisdiction of the Minnesota courts, but was found to have been domiciled in Minnesota for more than 180 days prior to the commencement of the Minnesota action, and was therefore found to be subject to the jurisdiction of Minnesota courts. The Manitoba court bifurcated its proceedings and, by judgment, dissolved the parties' marriage effective September 15, 1991. Both parties acknowledged the jurisdiction of the Manitoba court to terminate the marriage. Both parties also acknowledged the jurisdiction of Minnesota courts to consider spousal maintenance, the distribution of property related to the marriage, and related issues. These issues were then determined by the Hennepin County District Court in a judgment and decree dated October 1, 1992, which judgment and decree was based upon a settlement stipulation entered into between the parties after extended negotiations and numerous court proceedings. Both parties were represented by separate counsel throughout the settlement negotiations and court proceedings.

During their 34–year marriage, the parties acquired significant marital property which had a total value of approximately $3,000,000. This marital property was primarily located in Canada and included a number of commercial properties. One of these properties was a 40% interest in "Atrium on Rae," a condominium complex located in Regina, Saskatchewan.[1] The 40% interest in the Atrium property was valued at approximately $1,000,000.

---

1. The interest in Atrium on Rae was originally a 50% interest; however, during the dissolution proceedings, Lela Kornberg sold a 10% interest, leaving her with a 40% interest in the property.

During the proceedings, the district court appointed a financial expert to assist in valuing the marital property. In his report, the financial expert stated:

Most of the projects currently have cash flow deficiencies or minimum cash flow. Even the best projects such as Atrium on Rae and Avon Shopping Centre have not distributed cash to the partners because they are reducing mortgage debt or obligations to purchase the ownership interest. Significant cash distributions from these properties may be several years away.

The judgment and decree included a comprehensive provision incorporated from the settlement stipulation which provided for monthly dividend payments to Lela Kornberg in lieu of spousal maintenance. The arrangement was formulated because, under Canadian tax law, Lela Kornberg would receive more favorable tax treatment for dividends received than for spousal maintenance. More specifically, paragraph 16 of the judgment and decree provided that Lela Kornberg place the parties' 40% interest in the Atrium property in a newly created Canadian corporation called "Newco." She was to hold preferred shares in Newco, while Harvey Kornberg would hold the common shares. Lela Kornberg was to receive monthly dividends from Newco in the amount of $7,337 Canadian per month. In exchange for dividend payments, she limited "her right to spousal maintenance, as well as the right to seek a change in the amount or duration of the spousal maintenance awarded to her." The judgment and decree further provided that in the event of a default by Newco, Lela Kornberg had the right to receive all the Newco stock, giving her full ownership of the 40% interest in the Atrium property. The judgment and decree defined "default" as any of ten circumstances, including the failure to pay the monthly dividends. The judgment and decree also provided that "[Harvey Kornberg's] waiver of spousal maintenance, the distribution of property, and the assignment of debt" constituted the consideration for Lela Kornberg's limitation of maintenance.

Lela Kornberg transferred her 40% interest in the Atrium property to Newco with the understanding that dividend payments were to begin February 15, 1993, but Newco never paid her any dividends. Consequently, on September 30, 1993, she moved, among other things, to vacate the provisions of the judgment and decree regarding spousal maintenance based on failure of consideration, and also to vacate the judgment and decree pursuant to Minn.Stat. § 518.145 (1994) on the grounds of fraud, misrepresentation and other misconduct, and on the ground that the judgment is void. On December 30, 1993, Judge Eugene Farrell vacated the original judgment and decree, ruling that it was based on mutual mistake concerning payment of Newco dividends. Judge Farrell ordered temporary spousal maintenance at $7,337 Canadian per month. On the following day, Judge Farrell retired from the bench, and Judge Franklin Knoll was later assigned as the successor judge in the matter.

Harvey Kornberg subsequently moved that the December 30 order be amended to deny Lela Kornberg's motion to vacate the judgment and decree and to deny her spousal maintenance. He also moved that the order indicate that each party had competent counsel, that the stipulation showed that the parties contemplated the possibility that Newco might not produce dividends, and that there was no fraud, mistake or duress proven by Lela Kornberg to justify reopening the judgment and decree. On April 20, 1994, Judge Knoll granted Harvey Kornberg's motion. Judge Knoll stated that the judgment and decree was based on extensive negotiations, that both parties were represented by counsel, and that the parties contemplated that dividends might not be produced by Newco. Judge Knoll's order reinstated the original judgment and decree and denied Lela Kornberg's motion for spousal maintenance.

Lela Kornberg appealed, arguing that a successor judge has no authority to reconsider the ruling of a predecessor judge in the same case. The court of appeals affirmed the district court, holding that Judge Knoll had the authority to reconsider the decision of retired Judge Farrell, and that there was no abuse of discretion in Judge Knoll's refusal to reopen the judgment and decree.

## I.

■ We first address the issue of whether a successor judge has the authority to reconsider and to amend the ruling of a predecessor judge in the same case. The extent of a successor judge's authority to perform judicial duties is a question of law. This court is not bound by and need not give deference to the district court on a question of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984).

■ Minnesota Rules of Civil Procedure 63.01 addresses a successor judge's ability to perform judicial duties, including the reconsideration of a predecessor judge's order:

> If by reason of death, sickness, or other disability a judge before whom an action has been tried is unable to perform judicial duties after a verdict is returned or findings of fact and conclusions of law are filed, any other judge regularly sitting in or assigned to the court in which the action was tried may perform those duties; but if such other judge is satisfied that the duties cannot be performed because that judge did not preside at the trial or for any other reason, that judge may exercise discretion to grant a new trial.

Minn.R.Civ.P. 63.01. The rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." Minn.R.Civ.P. 1. Further, the rules should be given liberal construction so as to effectuate that purpose. *Christenson v. Christenson,* 281 Minn. 507, 512, 162 N.W.2d 194, 197 (1968).

Lela Kornberg argues that Rule 63.01 does not grant a successor judge the authority to reconsider the ruling of a predecessor if the predecessor judge resigns or retires. Rather, Lela Kornberg suggests that application of Rule 63.01 should be limited to the circumstances of death, sickness and other "sudden" or "immediate" disabilities. She maintains that a narrow interpretation of the rule would prevent parties from seeking review of every adverse ruling by a predecessor judge when a successor judge is assigned to the case following the resignation or retirement of the predecessor judge. Harvey Kornberg seeks a broader interpretation of Rule 63.01, and argues that the "disability" specified in Rule 63.01 should be interpreted to include the resignation or retirement of a judge.

■ We addressed a similar issue in *Brown v. Commissioner of Revenue,* 322 N.W.2d 194 (Minn.1982). In *Brown,* we applied Rule 63.01 to the reconsideration of a decision of a tax court judge who retired. We concluded that the words "other disability" in Rule 63.01 include retirement. *Brown,* 322 N.W.2d at 197. In *Brown,* a tax court judge retired after making findings of facts and conclusions of law. The Commissioner of Revenue then filed a motion for amended conclusions of law and a successor judge granted the motion. We noted that Minnesota statutes provide that the rules of civil procedure for the district courts govern the procedures in the tax court where practicable. *Id.* We applied Rule 63.01, and held that it was not improper for a successor judge in the tax court to review and to amend the conclusions of law of a judge who retired from the bench. *Id.* Rule 63.01 was applied to include the term "retire." *Id.* In reaching our holding, we concluded that the relator's concern that the retirement of the first judge allowed a second judge to review and to amend the conclusions of law without any new evidence was without foundation. *Id.*

The United States Claims Court has reached a similar result. That court, interpreting U.S. Cl.Ct. Rule 63(a) substantially the same as both Fed.R.Civ.P. 63 and Minn. R.Civ.P. 63.01, held that the term "disability" "undoubtedly includes retirement." *Sea–Gate, Inc. v. United States,* 1 Cl.Ct. 699, 701 (1983). In that case, the original presiding judge became ill and subsequently retired before findings of fact and conclusions of law were filed. The court concluded that another judge of the same court had authority to perform the judicial functions of a retired predecessor. *Id.*

We also find that policy considerations support the conclusion that a successor judge has the authority to reconsider the ruling of a predecessor judge in the same case. Permitting a successor judge to step into the shoes of the predecessor judge to reconsider

a previous ruling in the same manner as the predecessor accomplishes two policy objectives. First, it provides a process for reaching as fair and thoroughly considered a decision as possible at the district court level. *See, e.g., United States Gypsum Co. v. Schiavo Bros. Inc.*, 668 F.2d 172, 177 (3d Cir.1981) (observing that a correct decision by a district judge should not be reversed merely because it is contrary to a prior ruling by another district judge), *cert.denied*, 456 U.S. 961, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982). Second, it provides an efficient mechanism for completing cases and preventing unnecessary expense and delay, as noted in the Comments to the 1991 Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 63 advisory committee's note.

■ Parties should not be denied reconsideration of a predecessor judge's ruling by a successor judge if reconsideration by the judge who made the original ruling would have been permissible. When a successor judge is assigned to a matter, parties should not be required to wait until appeal for reconsideration of a predecessor's ruling. Accordingly, we hold that the words "other disabilities" in Rule 63.01 include resignation and retirement and apply when a judge is unable to perform judicial duties because of that judge's resignation or retirement from the bench. A successor judge has the authority to perform the judicial duties of a judge who has resigned or retired from the bench after a verdict is returned or findings of fact and conclusions of law are filed.

## II.

■ Even though a successor judge has the authority to perform the judicial duties of a predecessor judge who has resigned or retired from the bench, that authority is not unlimited. Rule 63.01 provides that "if such other judge is satisfied that the duties cannot be performed because that judge did not preside at the trial or for any other reason, that judge may exercise discretion to grant a new trial." Minn.R.Civ.P. 63.01.

■ Certain circumstances might indicate that a judge not reconsider a prior ruling, but instead exercise the discretion to grant a new trial pursuant to Rule 63.01.

Such a circumstance exists if reconsideration of a ruling involves a determination of the credibility of witnesses. However, a successor judge has the authority to reconsider and to amend findings of facts when there is no testimony of witnesses requiring the evaluation of credibility. *Great Northern Ry. Co. v. Becher–Barrett–Lockerby* Co., 200 Minn. 258, 274 N.W. 522 (1937). In *Great Northern*, this court commented that:

> the rule forbidding the modification of findings of fact by any other judge than the one who made them arose from the circumstance that where witnesses give their testimony in the presence and hearing of the trial judge he thereby is better able to determine the worth and weight of the testimony than one who has not seen or heard the witnesses on the stand.

200 Minn. at 261, 274 N.W. at 523; *see also Bahnsen v. Gilbert*, 55 Minn. 334, 56 N.W. 1117 (1893) (holding that a successor judge to a judge whose term had expired could not make findings in a case tried by the predecessor). But, in *Great Northern*, the court held that where the findings were based on a transcribed record alone, unaided by the appearance or demeanor of any witness, a successor judge had the authority to reconsider the findings of the predecessor judge. *Id.*, 274 N.W. at 523. As in *Great Northern*, Judge Knoll was presented with a record which consisted of transcribed depositions and documentary evidence. Judge Knoll was in the same position as Judge Farrell would have been had the motion been presented to him, and thus, under *Great Northern*, had the authority to reconsider the motion.

*United States Gypsum* supports the reasoning of *Great Northern*. *See United States Gypsum*, 668 F.2d at 172. In *United States Gypsum*, the first judge resigned, and a successor reconsidered a finding that certain wear and tear on property was "reasonable." The Third Circuit Court of Appeals held that the successor judge had the authority to reconsider the issue to the same extent the predecessor could have. *Id.* at 176–77. The court noted that "[a] litigant's right to try to persuade a court that it has erred should not be denied simply because of the unavoidable unavailability of the judge who

rendered the original decision." *Id.* at 177. The court stated that a determination of "reasonableness" is a mixed question of law and fact—one where the primary facts are not disputed, but ultimate inferences and legal conclusions are. "[W]here a 'mixed question of fact and law' is presented; that is, where the primary facts are not in dispute but ultimate inferences and legal conclusions are," the successor judge may reconsider the legal conclusions. *Id.* at 177.

█ We find the reasoning in *Great Northern* and *United States Gypsum* persuasive in the context of the present case. The primary facts in this case are not disputed, but the ultimate inferences and legal conclusions are. The judgment and decree provided that Lela Kornberg would receive dividends from Newco. The judgment and decree further provided recourse for Lela Kornberg in certain events of default by Newco. No testimony was taken with respect to the issues raised by the motion to vacate the judgment and decree; thus, there was no requirement for Judge Knoll to evaluate the credibility of witnesses. Judge Farrell had become unavailable to reconsider the motion because he retired from the bench. As we determined above, the successor judge has the authority, pursuant to Minn.R.Civ.P. 63.01, to perform the judicial duties of a predecessor judge who is unavailable by reason of resignation or retirement from the bench. We also conclude that, under the circumstances of this case, Judge Knoll had the authority to reconsider and to amend Judge Farrell's December 30 order.[2]

### III.

Having concluded that Judge Knoll had the authority to reconsider and to amend the ruling of Judge Farrell, we turn to the issue of whether Judge Knoll erred in granting Harvey Kornberg's motion to reinstate the original judgment and decree. Lela Kornberg maintains that the judgment and decree must be set aside because her waiver of spousal maintenance is the product of mutual mistake and fraud, and also because the waiver of spousal maintenance provision fails for lack of consideration. Minnesota Statute section 518.145, subd. 2 (1994) provides that a judgment and decree under Chapter 518 may be set aside for mistake or fraud. Minnesota Statute section 518.552, subd. 5 (1994) provides that a waiver or limitation of maintenance must, among other things, be supported by consideration.

█ Judge Knoll found that the provisions of the stipulation do not indicate that Lela Kornberg was induced by fraud or mistake to enter the stipulation and that she did not establish grounds upon which the judgment and decree could be vacated. A district judge's findings of fact are not set aside unless clearly erroneous. Minn.R.Civ.P. 52.01; *Kucera v. Kucera,* 275 Minn. 252, 254–55, 146 N.W.2d 181, 183 (1966). Judge Knoll's decision not to reopen the judgment and decree will not be disturbed absent an abuse of discretion. *Maranda v. Maranda,* 449 N.W.2d 158, 164 (Minn.1989); *Anderson v. Anderson,* 303 Minn. 26, 225 N.W.2d 837, 840 (1975).

### A. Mistake.

Lela Kornberg argues that the basic premise of the parties' agreement was that Harvey Kornberg was to provide for her support through dividend payments by Newco, and that since no dividends were forthcoming, the waiver of maintenance provision of the judgment and decree was based on mistake and should be vacated pursuant to section 518.45, subd. 2(1). Lela Kornberg maintains that Judge Farrell's conclusion that the judgment and decree should be set aside includes a "subsidiary finding" that to leave her to the supposed remedy of repossessing her interest in the Atrium property was not in the contemplation of the parties. Judge Farrell

---

**2.** The Minnesota Court of Appeals stated that resolution of this case involved application of the "law of the case" doctrine. *Kornberg v. Kornberg,* 525 N.W.2d 14, 18 (Minn.App.1994). The court reasoned that the law of the case, a flexible and discretionary doctrine, indicates a district court does have the discretion to reconsider a prior judge's ruling. *Id.* However, as stated by this court, the doctrine is not normally applied by a district court to its own decisions. *Loo v. Loo,* 520 N.W.2d 740 at n. 1 (Minn.1994). Accordingly, we do not apply the law of the case doctrine to the district court rulings in this case.

found the waiver of maintenance provision was based on mistake and stated in his order:

This agreement mistakenly envisioned a good faith effort on the part of [Harvey Kornberg] to form a corporation to be used as a vehicle for [Lela Kornberg] to obtain her share of the marital estate * * *. The demonstrated impossibility of achieving the desired effect was not contemplated by the parties. It is the Court's finding that the misunderstanding or * * * mistake prevented there being an effective meeting of the minds as to the nature of the agreement.

 But Lela Kornberg's argument and Judge Farrell's order do not address paragraph 16 and other provisions of the judgment and decree, nor the stipulation negotiated by the parties. Paragraph 16(i) of the judgment and decree provides: "In the event of a default by Newco as defined herein, [Lela Kornberg] shall, upon giving 10 days written notice of default * * * have transferred to her and receive all the common shares of stock of Newco." This language appears in the stipulation which was the result of extensive negotiations between the parties. To conclude that "the remedy of taking repossession was not in the contemplation of the parties" is contradictory to the facts and the plain language of the judgment and decree. Paragraph 16(i) specifically provides for the possibility that no dividends would be paid, and gives Lela Kornberg recourse—that she may have transferred to her all the common shares of Newco—in the event no dividends are forthcoming. Furthermore, paragraph 16(i)(4) of the judgment and decree expressly contemplates default by Newco—"[f]ailure to make any pay-

ment of dividends to petitioner * * * within 20 days after [notice]," as well as nine other events of default, including Newco's failure under paragraph 16(d) to "pay a monthly dividend on the preference shares."

In reinstating the original judgment and decree, Judge Knoll stated in his findings of fact that the waiver of maintenance was formulated as a result of an agreement by the parties, that both parties were represented by counsel throughout extensive negotiations, and that the parties anticipated that dividends might not be produced and provided recourse for Lela Kornberg in the event that dividends were not paid. Judge Knoll concluded on the basis of the record that there was no indication that Lela Kornberg was induced to enter the stipulation by mistake. We conclude that Judge Knoll's findings are supported by the record and are not clearly erroneous. Judge Knoll did not abuse his discretion in denying Lela Kornberg's motion to reopen the judgment and decree on the basis of mistake.

## B. Fraud.

 Lela Kornberg next contends that her waiver of maintenance was induced by fraud on the part of Harvey Kornberg.[3] The elements of fraud in the context of marital dissolution are: (1) an intentional course of material misrepresentation or nondisclosure, (2) having the result of misleading the court and opposing counsel, and (3) making the property settlement unfair. *Maranda,* 449 N.W.2d at 165. In *Maranda,* the wife was systematically excluded from access to information concerning finances, the husband willfully misrepresented facts about marital property, the wife's counsel's independent

---

**3.** The first consideration with respect to a finding of fraud is whether the district court applied the correct standard of proof. Judge Knoll applied a clear and convincing standard. The court of appeals noted that Minn.Stat. § 518.145 is silent on the standard of proof required to show fraud, and stated that the standard of proof is a preponderance of the evidence. *Kornberg,* 525 N.W.2d at 20 n. 1 (citing *State by Humphrey v. Alpine Air Prods., Inc.,* 500 N.W.2d 788, 791 (Minn.1993). *Alpine Air* instructs that the preponderance of the evidence standard is the proper standard in a civil fraud case. *Id.* The court of appeals also noted that even if the district court had used a

preponderance of the evidence standard, that court would not have found fraud.

The dissent below notes that the use of an incorrect standard of proof amounts to fundamental error. *Becker v. Alloy Hardfacing,* 401 N.W.2d 655, 659 (Minn.1987). However, an error in the standard of proof is only reversible error if it results in prejudice to the other party. *Id.* at 660. In the present case, as the majority on the court of appeals held and as we hold also, no showing of fraud can be sustained under either standard. Thus, Lela Kornberg is not prejudiced by the use of the incorrect standard required to show fraud.

judgment was questioned, and the husband concealed significant amounts of money. The court in *Maranda* concluded that because of these facts it was impossible for the district court to approve a fair settlement. *Id.* at 166.

▮▮▮ The facts of the present case stand in contrast to those of *Maranda*. Lela Kornberg argues that Harvey Kornberg's misrepresentation was of his "intention to cut off Lela's support immediately after the decree and to try to insulate himself from legal liability for the post-divorce support * * *." Lela Kornberg contends that this covert intention in conjunction with the Newco provisions in the judgment and decree misled the court and counsel into believing Lela Kornberg would be supported by Newco dividends, and that the "misrepresentations now clearly appear to have been dishonest and to have made the property settlement unfair." But Lela Kornberg was not excluded from access to information concerning finances, has made no allegations of concealment of funds, and has made no allegations of Harvey Kornberg's misrepresentation of a specific material fact. She alleges only his covert and unexpressed "intention."

The record contains no evidence that Harvey Kornberg intentionally made misrepresentations to Lela Kornberg, that the court was misled in any way, or that the property settlement was unfair. To the contrary, the provisions of the judgment and decree incorporate the stipulation, providing for dividend payments or recourse in the event of default. Furthermore, the report of the court-appointed financial expert makes clear that cash distributions from the Atrium property were not imminent. We conclude that Judge Knoll did not abuse his discretion in determining that the terms of the stipulation, and specifically Lela Kornberg's waiver of spousal maintenance, were not induced by fraud.

### C. Lack of Consideration.

Minnesota Statute section 518.552, subd. 5 provides that parties may expressly preclude or limit modification of maintenance through a stipulation, made a part of the judgment and decree, if the court makes specific findings that the stipulation is fair and equitable, is supported by consideration described in findings, and that full disclosure of each party's financial circumstances has occurred. Lela Kornberg contends that the stipulation incorporated in the original judgment and decree is unsupported by the consideration required in section 518.552, subd. 5.

▮▮▮ The original judgment and decree sets forth the consideration for the waiver of maintenance as required by Minn.Stat. § 518.552, subd. 5, identifying three separate items of consideration: Harvey Kornberg's waiver of spousal maintenance, the distribution of property, and the assignment of debt. Lela Kornberg asserts that nonpayment of dividends by Newco constituted a failure of consideration. However, the consideration for Lela Kornberg's waiver consists of multiple parts, as described above. Furthermore, the stipulation provided for recourse in the event of nonpayment of dividends, and we have already concluded that this recourse obviated a finding of mistake or fraud. Because the judgment and decree complies with the requirements of Minn.Stat. § 518.552, subd. 5, and the findings specifically set forth consideration for the waiver of maintenance, we conclude that Judge Knoll did not abuse his discretion in denying Lela Kornberg's motion to reopen the judgment on the ground of failure of consideration.

### IV.

Lela Kornberg makes two additional arguments to support her claim. She first asserts that the district court, pursuant to its power to enforce its judgments, must enforce Newco's obligation to pay dividends against Harvey Kornberg, because he is the real party in interest in this case. Lela Kornberg also argues that she should be allowed to prove her need for maintenance under *Katter v. Katter*, 457 N.W.2d 750 (Minn.App.1990), based on the standards for modification of rehabilitative maintenance. We find that both of these arguments are without merit.

▮▮▮ The court has the power to implement or enforce the provisions of a judgment and decree so long as the parties' substantive rights are not changed. *See Potter v. Potter*, 471 N.W.2d 113, 114 (Minn.App.1991). The

court cannot create in Harvey Kornberg an obligation that was placed upon Newco in the stipulation incorporated in the judgment and decree. To do so would change his substantive rights. Additionally, Lela Kornberg's reliance on *Katter* is misplaced. She was not awarded rehabilitative maintenance; therefore, the standards for modification of an award of rehabilitative maintenance do not apply.

We affirm the decision of the court of appeals.

COYNE, Justice, dissenting.

I respectfully dissent. Although I have no doubt that a successor judge has the authority to reconsider an order issued by a judge who subsequently resigned or retired from the bench, it seems to me that the original order is entitled the same deference that the majority extends to the order of the successor judge. To put it another way, I believe that judicial courtesy, as well as sound judicial administration, requires the successor judge to reconsider the order of the predecessor judge by reviewing the order according to an abuse of discretion standard. Here, it appears that the successor judge simply ignored Judge Farrell's order and decided the matter de novo. The reason for discarding the original order while reviewing the order of the successor judge under an abuse of discretion standard escapes me. I would reverse and reinstate Judge Farrell's order of December 30, 1993.